## M. VAN ALSTYNE, EXECUTRIX, v. W. B. SORLEY.

1—Though the acceptor of a draft who accepts for the accommodation of the drawer, may be only a surety as to the drawer, yet as to the holder he is the principal debtor and primarily liable, even though the holder received the draft and acceptance with full knowledge of the accommodation character of the transaction.

2—An extension of time of payment granted by the holder to the acceptor is nothing more than an indulgence of a debtor by his creditor, and can not operate a release of the acceptor from his liability ; and it is immaterial that the extension was procured by the drawer from the holder by the payment of a valuable consideration. Such an extension would raise no equities, even in favor of the acceptor as against the holder.

3—The holder of such an acceptance is not bound, in order to recover against the acceptor, to bring his suit to the first term of court after the maturity of the draft, or to the second term, showing cause for not suing to the first. Such statutory diligence is only requisite to fix the liability of drawers or indorsers of bills, or of indorsers of notes ; but the acceptor of a bill, being liable to the holder in any event, is not within the purview of the enactment.

4—An acceptor of a draft, who accepted for the accommodation of the drawer, has the right, however, under Article 4783, Paschal's Digest, to notify and require the holder to bring suit forthwith upon its maturity ; and should the holder fail to do so, equity would interpose and relieve the acceptor.

5—This court takes cognizance of the fact that in January, 1865, the revenue offices of the United States were not in operation in Texas ; and a draft then drawn is not invalidated as an instrument of evidence, because it was not stamped when made.

6—On a draft for a certain number of "dollars in specie," it was error to render a judgment for "coin." The judgment should have been for "dollars," so as to be payable in any legal tender.

7—The case of ——, Wallace, ——, referred to, and considered as relevant only to contracts in coin entered into before, and not since the passage of the Legal Tender act of Congress.

8—A judgment erroneously rendered for "coin" by the court below, when it should have been rendered for dollars, will not be remanded to the court below, but this court will render the proper judgment.

Appeal from Harris. Tried below before the Hon. George R. Scott.

The facts are stated in the opinion of the court.

*Gray & Botts*, for the appellant.—Can an *accommodation acceptor* of a bill, under any circumstances, claim the equitable defenses of a surety, by showing that he was in fact such, and so recognized and treated by the creditor? If he can, is it a valid defense that he was in fact a surety for the drawer, and that by extension of time given to the drawer, by valid agreement with him, without the consent of the acceptor, he will be released from liability in equity? It was ruled by the court below in the negative; and that ruling, we believe, was erroneous.

It is undoubtedly true, and will scarcely be contested, that in cases of admitted suretyship the alteration of the contract, by agreement with the principal, without consent of the surety, gives him an equitable defense, which arises out of the relations existing between the principal and surety, and not on those between the creditor and the principal. Thus the surety has a right, at any time after default by the principal, to come into a court of equity to compel performance of the contract, for which he is responsible. The surety may also fulfill the contract himself, and then take legal recourse for his indemnity.

It follows from this doctrine that any act of the creditor, by which these rights are impaired, or if the power of resorting to them be delayed, places him in a different situation from what he occupied originally, and may throw the whole burden of the obligation upon him, because the principal may become insolvent. The necessary consequence of an agreement, valid in law, by the creditor to delay or postpone payment, prevents the surety from resorting to legal proceedings for his own protection. No matter what may be the form of the contract, or

how the relation of principal and surety is created, the same result or effect follows, to the injury of the surety, from such an agreement; and therefore it has always been held in equity that such agreements for delay to the principal will discharge the surety. (Rees v. Berrington, 2 Vesey, Jr., 540, and various authorities.) It is an admitted principle in equity. (Story's Equity, §§ 325–6.)

However variant or unsettled the common law cases may be, it is well settled doctrine also in most of the American courts—certainly in Texas, where we have no distinction of legal or equitable defenses, it has been settled by the cases of Burke v. Cruger *et al.*, 8 Tex., 66, and Cruger v. Burke, 11 Tex., 694; Wybrants v. Lutz, 24 Tex., 309. So, also, even after judgment. (Dykes v. Pilgrim, 24 Tex., 383; Johnston v. Mills, 23 Tex., 704.)

In Bell v. Banks, 3 Scott's New Rep., 503, Chief Justice Tindall held at law that, where as between two parties, both answerable for a debt, one was primarily liable and the other as surety, the act of giving time to the principal was a legal fraud on the surety, by depriving him of the power to compel payment by proceedings in equity, on the faith of which he might have entered into the contract. And this principle has been asserted and followed in America, Bank of Steubenville v. Leavitt, 5 Hammond, 207; Harris v. Brooks, 21 Pickering, 195; Carpenter v. King, 9 Metcalf, 511, and numerous others.

Now *at law* it has been frequently objected, and decisions doubtless can be shown to the effect, that where a party *appears on the face of a contract as principal*, as a joint covenantor, or joint and several obligor, that he is bound as principal, and that it is inadmissible to show by parol that he was in reality only a surety, because inconsistent with the terms of the written contract. But we submit that this reasoning is a begging of the question. The relations subsisting between the principal and surety, are outside of the written contract with the creditor, and if known to him, it is a legal fraud in him to so act in regard to them as to vary those relations without the consent

of the surety, to his injury, and then seek protection from the consequences by such a technical objection. The reason of the defense is as stated by Chief Justice Tindall, and by the courts in the cases last cited; and on such reason, we submit, substantially in the language of Messrs. Hair & Wallace, in the valuable notes to those leading cases, that even where the surety "is primarily and directly liable upon the contract, there is nothing repugnant to its terms, in his setting forth facts showing the want of consideration, or other circumstances, which entitle him to protection as a surety. The gist of such a defense does not consist in varying the terms or effect of the obligation, by which he was bound to the plaintiff. The effect of a plea setting up suretyship, as the ground on which to introduce matter amounting to an equitable discharge, as by giving time to the principal, depends upon the relation which it discloses as subsisting between the principal and surety. This relation is wholly collateral to the contract, and can not properly be said to be inconsistent with it. It does not vary the effect of the original contract, but it shows that the faith of the plaintiff was impliedly pledged not to interfere with the relations of the other parties to each other, and that this understanding, upon which the defendant made his engagement, has been violated. The case above cited of Bank, etc., v. Leavitt, was debt on a joint bond; Harris v. Brooks, assumpsit on a joint note; and Carpenter v. King was upon a joint judgment recovered upon a joint or joint and several note; yet it was held that parol evidence of the fact of suretyship, and of acts by the creditor giving time to the principal, was admissible at law, because it was not inconsistent with the contract, but only showed outside of it the relations existing between the joint parties, known and assented to by the promisee, which his subsequent acts had tended to impair or abrogate. The opinions in the Massachusetts cases are so clear and concise that we call attention to them. The same principle is decided in Ohio in Bank of Steubenville v. Hoge, 6 Hammond, 17, which was an action at law on a joint and several bond. So,

also, in The Branch Bank v. James, 9 Alabama R., 949, which was a suit on joint and several promissory note. So, also, in Grafton Bank v. Kent, 4 New Hamp., 221, it was held "that the rule is, that where a *maker of a note* has in fact signed as a surety, but does not appear on the face of the note to be a surety, he is to be treated and considered as a principal with respect to all those *who have no notice* of his real character; but that wherever it is material a defendant may show by extrinsic evidence that he made the note as a surety only, and *that it was known* to the plaintiff that he was only a surety."

The doctrine here asserted is also established in equity. (Story's Eq. Juris., vol. 1, §§ 325, 326, and notes; Rees v. Berrington, 2 Vesey, 540.)

Bonner v. Cox, 4 Beav., 379, was a case of joint and several bond under seal, and relief was granted the surety in fact. So of a joint bond, as held by Lord Eldon in Samuel v. Howarth, 3 Merivale, 272. In that case he said: "The creditor has no right—it is against the faith of his contract—to give time to the principal, even though manifestly for the benefit of the surety, without the consent of the surety." The reason of the law is well stated in that case, and in the Bank of Ireland v. Beresford, 6 Dow, 238.

We have stated the reasons of the law in order to show that they also apply to the case of an *accommodation* acceptor of a draft, who pleads that he was only a surety. There is no substantial distinction between an acceptor and a joint, or joint and several, maker of a bond or note, where all appear as principals. Certainly there is none between an acceptor of a bill, so far as the payee is concerned, and the maker of a note. Both appear and contract as principals to the holder or creditor, yet both may, in fact, be made for the mere accommodation of the drawer or payee. It is natural that there should be the same questions arising in law courts in cases of accommodation acceptances, as in the others. We find the same efforts to exclude parol evidence of the real fact of suretyship, and the same contrariety of opinion in law courts. At law,

both in the elementary writers and in the reports, there is authority against the validity of such a defense by an accommodation acceptor, but it is all supported by the same train of reasoning, and we are not without authority on our side.

Lord Ellenborough, even in a court of law, could not perceive the justice of such distinctions, and accordingly held in Laxton v. Peat, 2 Campbell, 185, that an acceptor of a bill, who had put his name on it for the accommodation of the drawer, was a mere surety, and as such would be discharged by time given to the drawer by the holder, *who knew the fact that he had so accepted* only for accommodation, and had so received it.

The same doctrine is asserted in Manly v. Boycot, 2 Ellis & B., 46; also the principle is maintained in Parks v. Ingram, 2 Foster, 283; Re. Babcock, 3 Story R., 393; Baker v. Martin, 3 Barbour, 634; Jones v. Brooke, 4 Taunton, 464.

The authority of Laxton v. Peat was denied by Lord Mansfield in Raggett v. Axmore, 4 Taunton, 730, but the case did not call for his dictum, because it was clear that there was no sufficient evidence of the fact that it was an accommodation acceptance.

Fenton v. Pococke, 5 Taunton, 192, is the leading case at law against Laxton v. Peat, yet in that case Lord Mansfield said that the plaintiff *did not know when he took the bill,* that it was an accommodation acceptance, though he did not decide on that ground. So, also, in Kerrison v. Cook, 3 Campbell, 362, Gibbs, J., expressed grave doubts of Laxton v. Peat, but distinguished that case from it because the defendant had promised to pay the debt after time had *been given.*

It will be observed that all the English and most of the American cases holding this stringent doctrine, are law cases, and all go on the distinct ground that parol evidence of suretyship would be inconsistent with, or contradict the written obligation, because it purports that the acceptor contracted as a principal. We will not cite them, and it may be that the weight of authority is against us on that point, so far as num-

bers make weight. It is against the reason of the authority that we contend. Decisions are of no weight unless supported by good reason, and are consistent with the reasons of the same court in like cases. Now we apprehend that the very same reasoning is applicable to a joint and several note as to an accepted bill. Yet these same courts hold that one of these parties may show the fact of suretyship, and equitable discharge as such.

Mr. Byles, in his work on bills, is careful to state that the distinction is made *in courts of law*, which " hold the accomdation acceptor liable as the principal debtor, though the holder, at the time of making or receiving the bill, knew the acceptance to have been without value; and yet the acceptor stands the same as a maker of a note does. So at law the same difficulty arises on a joint or several note, whether one of the makers can show the fact of suretyship, and consequent discharge." (Byles, pp. 291, 292.)

But we have already shown by ample authority and reason that in such cases, even at law, this equitable defense is admitted and sustained. Our own court has so decided in the cases before cited. Where, we ask, is the distinction? Upon what good foundation does it rest? We submit that there is none. Where a party enters into a contract, though nominally as principal, yet really as surety, he thereby acquires certain rights against the principal, which may become essential to his protection or indemnity. The party accepting the contract, who knows the facts, must be considered as assenting to them, and to the rights arising on the relation of suretyship, outside of the written contract, as much as if he had made an express agreement to that effect; and he therefore has no right to pursue a course of action which is calculated to place the surety in a worse condition than that which he occupied before. This is the view of courts of equity, and if the defense is valid in such courts, it is valid in Texas and in this case. We cite further for the equity doctrine: Galen v. Niemcewietz, 11 Wend., 312; Nisbett v. Smith, 3 Brown C., 581;

Skip v. Huey, 3 Atkyns, 91 ; White & Tudor's Leading Cases in Equity, 707 ; notes in American edition, vol. 2, part 2, p. 380, *et seq.* 388.

Burke *et als.,* v. Cruger, 8 Tex., 66, is full to the point. It was a case of joint bond, under seal, where all appeared as principal contractors, yet the fact of suretyship was allowed to be shown in defense.

The authority, moreover, of Fenton v. Pococke was expressly doubted by Lord Eldon in *ex parte* Glendining, Buck, 517; Bank of Ireland v. Beresford, 6 Dowling, 233. It is also held that an accommodation acceptor, who pays the creditor, is entitled to all instruments and securities given by the principal debtor or drawer, which is a recognition of his right as surety. (Dowbiggen v. Bourne, Young, R., 115.)

Again, however, it may be contended that it has been decided that where a party has *expressly* contracted as principal on the face of the paper, as where the contract in terms *expresses or calls* them principals, they shall be deemed to have *waived* any right to prove suretyship, or *estopped* from so doing; and therefore it is claimed that an accommodation acceptor of a bill can not. We admit that there are cases, holding that when the contract *expressly calls* the obligor a principal, he shall be so held both in law equity; because they say and argue that such expression is a waiver of, or estoppel against, any equitable defense of suretyship. Now, we again submit that this argument is all in a circle, and begs the entire question. It is based wholly on the form of the instrument, and is just the same argument relied on in the cases before stated of joint obligors, joint and several obligors, or a maker of a note, where all appear to be principals and contract in form as such. If the mere *expression* of the fact makes the distinction, it is quite too subtle for ordinary comprehension. Certainly such a doctrine will enable parties at any time to defeat equitable defenses by making contracts say in words what are not the facts of a transaction. No such doctrine is admitted in equity. On the contrary the books are full of instances where the form is dis-

carded and the substance and truth of the case ascertained by parol, and enforced accordingly.   A very familiar instance is that of an absolute deed on its face, being held only a mortgage when shown to have been made a security only for money loaned.   Stampers v. Johnson, 3 Tex., examines the question and reviews the authorities.   So, also, a resulting trust may be shown outside of and contrary to the expressions of a deed. (Mead v. Randolph, 8 Tex., and hundreds beside.)   In all instances the equity arising from facts outside of the instrument is administered.   The doctrine here contended for by us, therefore, is consistent with those cases, but the contrary is inconsistent with the entire field of equity jurisdiction.   It is inconsistent also with the authorities we have submitted.   There is no real distinction between a contract *calling* a party principal, and one in which he purports to be, and contracts in the form usual for a principal.

The relation of principal and surety is not dependent on the form of the contract, and it may exist not only when the obligation is *primarily or solely* binding on the surety, but when, as in the case of a note made for the accommodation of the payee, the principal is *prima facie* entitled to exact its performance. (Moore v. Wesley Church, 10 Barr., 273; Mauri v. Heffernan, 13 Johnson, 58.)

This doctrine, and the decisions before cited by us, and the cases of Pain v. Packard, 13 Johns., 174; Schroppel v. Shaw, 5 Bar., and 3 Comstock, 446; Archer v. Douglas, 5 Denio, 107; Smith v. Turner, 1 McCord Ch., 443; Burke v. Cruger, 8 Tex., 66, can not be reconciled with the doctrine now contended for by the appellee, and asserted by the cases cited by him.   There is a want of uniformity in them, and the attempt to draw a distinction is too subtle and refined to be tolerated in a court of equity, or in any tribunals seeking to establish uniform rules for the government of all parties.   It is not easy to see why parties to a contract can show that, as between themselves, the duty of performance rests on one alone, though the terms of the contract import the contrary, and should yet be held

estopped to prove it in a suit upon the contract. We repeat that the effect of such evidence is not to contradict or vary the obligation, but only to show the existence of collateral rights and liabilities, from facts dehors the contract; and we refer to what we have before said on this head. The refusal of such a defense is to deprive a party of all defense in equity, *because of the form of his contract,* which shocks the innate sense of justice. Why should an acceptor of a bill be debarred from proving the want of consideration to him, and that he was, in fact, only a surety, when the maker of a promissory note is allowed that defense? Why should he be debarred, when a joint obligor in a note or sealed bond is not? Why should a *several* obligor in a bond be allowed such defense, and it be denied an acceptor? We confidently affirm that it cannot be so held without creating an apparent inconsistency and want of uniformity in the Texas forum, and subjecting ourselves to the same discrepancies that have arisen elsewhere from technicalities of law as distinguished from equity. Decisions in other States have no weight by reason of authority, but only by authority of the reason for them. If the reason be insufficient the decision should have no weight, and we invoke the reason of this court to establish for us an uniform and consistent rule on this subject, applicable to all parties who contract, without being bound by the technicalities of form, which astute and cunning men will always import into their contracts, if permitted thereby to evade the eye of justice and defeat the substantial rights of parties in equity.

Assuming, then, that we have shown that the reason of the law is that the relationship of surety may be proved according to the real facts of the case, outside of the written contract; and that this reasoning is as applicable to the case of an accommodation acceptor as to any other case where a party contracts in form primarily as a principal; and especially that it can be made a defense in equity. We now call attention to the specific allegations of the answer in this case. It is there alleged, not only that Van Alstyne was an accommodation acceptor,

without consideration to him—that the consideration was to Shirley alone—and that the plaintiff, Sorley, knew these facts, but that Van Alstyne distinctly accepted the bill *as a surety for Shirley,* and that Sorley took it with that understanding, and afterwards so treated and recognized it ; and that in violation of the rights of Van Alstyne, arising on these facts, he extended the time for payment at Shirley's request, without Van Alstyne's knowledge or consent ; and that this extension was for thirty days from the 5th of February, 1865, according to the endorsement on the bill, (*or to November 6, 1866, when the suit was instituted, according to the allegations of the plaintiff,*) in consideration of two and a half per cent. advance on the amount due, to be paid him by Shirley. Here there is an agreement for delay of nearly two years, for a valid consideration ; and the plaintiff afterwards alleges that Shirley has become insolvent, and actually discontinues his suit to him on that ground.

It is established, both in law and equity, that when there is an agreement to give time to the principal, the mere presumptive injury to the surety arising therefrom by the change of the contract, is sufficient to exonerate him ; and the courts will not enter into the inquiry whether the delay has been in fact injurious. This was explicitly decided in Rees v. Berrington, 2 Vesey, Jr., 540, and has been so held in most of the States of the Union. (See Miller v. McCown, 7 Paige Ch., 452 ; Bangs v. Strong, 7 Hill, 250 ; Comegys v. Booth, 3 Stewart Ala., 14.) Huffman v. Hurlburt is a clear case of joint and several obligation, 13 Wendell, 377. (Clippinger v. Crepps, 2 Watts, 45 ; Young v. Littlejohn, 2 Hawks, 526.)

Even after judgment against both parties, time given to the principal will discharge the surety ; much more than where it is given before suit. (Carpenter v. King, 9 Metcalf, 511 ; Potts v. Nathans, 1 W. & S., 155 ; Com. v. Miller, 8 S. & R., 452 ; Carpenter v. Devon, 6 Ala., 710 ; Com'l. Bank v. Western Reserve Bank, 11 Ohio, 444 ; Pilgrim v. Dykes, 24 Tex., 383 ; Johnston v. Mills, 23 Tex., 704.)

*Hill & Hill,* for the appellee.—The instrument is a mercantile contract, to be construed according to the rules and principles of mercantile law. (Rockmore v. Davenport, 14 Tex., 602; Brown v. Wiley, 20 Howard, 442.)

Nothing will discharge the acceptor but payment or release, and accommodation paper is now governed by the same rules as other paper. (3 Kent, 110, *et seq.*)

Acceptor, whether for accommodation or for value, is not discharged by time given to, or by security taken from the other parties to the bill. He is liable at all events. (3 Kent, 158, 160; 3 Story's R., 393; Story on Prom. Notes, §§ 418 to 423, and notes; Story on Bills, §§ 191, 432, 434; 1 Parsons on Bills and Notes, p. 325; Byles on Bills, p. 291.)

LINDSAY, J.—William B. Sorley, the payee, sued Thomas Shirley and W. A. Van Alstyne, the drawer and acceptor of the following draft, to wit:

"$7000 57.          "HOUSTON, TEXAS, January 6, 1865.

"Thirty days after sight, pay to the order of W. B. Sorley & Co., seven thousand dollars and fifty-seven cents, *in specie,* value received, and charge the same to account of

"THOMAS SHIRLEY, Houston.

"To W. A. Van Alstyne, Esq."

This draft was accepted by the drawee, Van Alstyne, but was never negotiated and put in circulation. It remained in the hands of the payee until the institution of this suit. The drawer having become bankrupt, the suit was discontinued as to him; and the acceptor dying pending the suit, his personal representative answered, alleging that her testator was only an accommodation acceptor, and, in fact, was only a surety for the drawer, which was understood and known by the payee; and that the payee extended the time of payment to the drawer after the maturity of the draft, without the knowledge or consent of the acceptor; and that, therefore, the acceptor was thereby released.

This draft, never having been negotiated and put into circu-

lation as commercial paper, but remaining under the control of the original parties to it, is to be construed by what can be arrived at as the intention of the parties in making it, rather than by the principles of commercial law; and the relative rights of the parties must be settled and determined according to the equities developed by their action in conformity with that intention. In the form in which it stands, it is but a simple contract, which must be construed according to the intention of the parties.

It is contended in defense that the acceptance was made for the accommodation of the drawer, of which the payee had knowledge. This is, no doubt, true. But it was no valid instrument, having any binding force, until it was so accepted, and the act of the acceptor created the obligation in which he was the principal, and he was primarily bound to pay it. The court is bound to infer that this draft was made either to raise money by the drawer to pay a debt which he owed the payee, or it was for the purpose of giving the drawer time upon his indebtedness to the payee to enable him to realize means from other sources to meet such liability. If the latter was the object, the extension of the time by the payee was doing nothing more than carrying out the original design of the parties. If the former, it could only be done by the payment of the draft at maturity by the acceptor, as he agreed to do by the acceptance. In such a state of facts, any agreement with the drawer to suspend coercion upon the draft, or to extend the time of payment of it, even for a consideration, was the extension of indulgence to the acceptor, who was primarily liable upon it, and which positive liability of the acceptor must be presumed to have been the controlling motive of the payee in receiving the draft, or bill, in lieu of the indebtedness of the drawer to him. Such extension of time could not, therefore, create any equity in favor of the acceptor.

Although this bill, or draft, was never negotiated, from its very form, it must be treated, in construing it, as negotiable instruments are treated. In doing so, however, it does not

come within the purview of the statute, requiring suit to be brought to the first term of the court after maturity of the draft, or to the second term, showing cause for failure to bring it to the first. By that statute such diligence is only required on bills of exchange and promissory notes indorsed, in order to fix the liability of the drawer, or maker, and of the indorsers, not of the acceptor; because the acceptor is liable in any event to the holder of the draft. This draft being a simple contract, and not an indorsed promissory note, or bill, if the acceptor was only a surety, according to the intention and understanding of all the parties in this accommodation transaction, then, by Art. 4783, Paschal's Digest, the acceptor had a right to give notice to the holder to bring suit forthwith upon the maturity of the obligation; and if the holder failed to do so, equity would then interpose and release the acceptor. But no equity could arise in favor of the acceptor unless such notice was given. The question of such suretyship might have been tested in the trial of this cause in the court below; but it could not have been permitted to delay the action and the judgment in favor of the plaintiff. However, the cause being discontinued as to the drawer, by reason of his bankruptcy, it would seem to have rendered the investigation entirely nugatory in this case. The court can not, therefore, perceive how the agreement of the holder with the drawer of the draft, even for a valuable consideration, not to press the accommodation acceptor of the drawer for immediate payment, could raise an equity in favor of the acceptor. Such is the equitable view which the court takes of the transaction. Treating it as a commercial transaction, and applying the rules of mercantile law to it alone, the best accredited doctrine of that law is strongly against the acceptor's release from liability on such accommodation paper. Though he may be a mere surety as to the drawer, he is the principal as to the holder; and the extension of the time of payment, however it may have been brought about, is nothing more at last than an indulgence to the acceptor by the creditor.

In regard to the question of the revenue stamp affixed subsequently to the making of the instrument, this court knows historically, if not judicially, that the revenue offices of the United States were not in operation in this State at the time of the making of this instrument; and as the law does not exact impossibilities, it was not invalidated as an. instrument of evidence because it was not then stamped. The subsequent affixing of the necessary stamps saved the government at least from being defrauded of its dues.

There is error, however, in the judgment for *coin.* The instrument sued upon calls for dollars *in specie.* The judgment is variant, both from the pleadings and the proof, as well as from the law. Nor should the judgment have been given for *specie*, but for dollars simply, and parts of dollars, according to the finding of the jury under the instructions of the court, so as to be payable by the judgment debtor in any legal tender established by the national authority. It must be observed that the case of Bronson v. Rodes, decided by the Supreme Court of the United States, declaring that gold contracts might be specifically enforced, was applicable alone to contracts for payment in gold coin entered into prior to the passage of the act of Congress making certain paper issues of the government legal tenders in the payment of debts. That court is the authoritative interpreter of the acts of legislation of the government; but it will not be presumed in advance that that court will pronounce a like opinion in reference to similar contracts entered into after the enactment of the law, since such an adjudication would virtually declare the act to be a violation of the constitution of the United States. For this error in the judgment of the District Court it is reversed. And this court, proceeding to render such judgment as ought to have been rendered, it is adjudged that the plaintiff in the action do have and recover of the defendant in the court below the amount in dollars and parts of dollars as were found to be due by the jury in their verdict, for which the plaintiff may have execution; and that the appellant be per-

mitted in the District Court to try and determine the question of suretyship, if desired by the party, upon the issue tendered in the answer. It is further ordered and adjudged that the appellee recover his costs in the District Court, and that appellant recover costs in this court, for which execution may issue.

Reversed and rendered.