### TRADERS NATIONAL BANK v. J. I. CLARE ET AL.
#### No. 2728.

1. **Sureties may Buy of their Principal for Self-Protection.**—Sureties may assume the debt of their principal and take property at reasonable price for the debt so assumed, and the transaction is valid, whether the principal be solvent or insolvent.

2. **Purchase of Encumbered Lands.**—Those who purchase for a fair price lands that were already covered by lien to the full value, with agreement to pay the debt secured by the lien, could not by such purchase practice a fraud upon any person.

3. **Parol Agreement for Application of Purchase Money.** — A creditor in failing circumstances conveyed lands upon full consideration, the purchaser by parol stipulating that the purchase money should go to the payment of the vendor's debts. In pursuance of the parol agreement the purchaser executes promissory notes to the vendor; the vendor executes a deed to vendee for the land, the deed reciting the promissory notes given for consideration; the vendor of the land and payee in the note endorses the note to the creditor. *Held,* that parol evidence was competent to show the purpose of the parties to the sale, and that such testimony in no way contradicted the written part of the transaction, viz., the deed and note.

4. **Case Discussed.**—This case distinguished from Elser v. Graber, 69 Texas, 225. If the promissory note taken by a failing debtor for property be taken to be applied to his debts, and the purchaser provides for such application, and it is so applied, such sale is valid. ·

5. **Fraudulent Preference.**—On the issue of fraud charged to avoid a sale by a failing debtor to a creditor, it is competent to prove that the debtor offered the complaining creditor property at the price for which it was afterwards sold to another creditor.

6. **Principal and Surety.**—Several parties borrow a sum of money; by agreement they share it among themselves, but execute their note to the lender for the gross sum. *Held,* that as between the parties making the loan each was principal for the amount he received and surety as to the balance, and that one thus a surety could assume the debt of one or more for whom he was surety, and to protect himself take property from such principal.

7. **Same.**—Such conveyance to the surety would be valid although the creditor whose debt was thereby assumed did not release the principal from personal liability.

8. **Practice in Supreme Court.**—An appellee not having given notice of appeal nor assigning error can not have a revision of orders made against him in the trial court.

APPEAL from Bee.    Tried below before Hon. H. Clay Pleasants.
The opinion contains a statement.

*H. P. Drought* and *W. S. Dugat,* for appellant.—1.   The opinion of a witness that a person is solvent or insolvent is inadmissible for any purpose, particularly when the witness has no knowledge of the assets and

liabilities of the defendant.    Wait on Fraud. Con., 2 ed., sec. 273; Laws. on Exp. and Opin. Ev., p. 515; Brice v. Lide, 30 Ala., 647; Nuckolls v. Pinkston, 38 Ala., 615; Royall v. McKenzie, 75 Ala., 363; Denman v. Campbell, 7 Hun, 88; Babcock v. Bank, 28 Conn., 306; Brundred v. Machine Co., 4 N. J. Eq., 295.

2.    If defendant J. I. Clare was solvent when the conveyances were made, and they were taken in good faith as alleged, then the agreement as to the subsequent disposition of the notes was irrelevant and surplusage.    If Clare was insolvent, or the conveyances were made as charged by plaintiff, then, because they reserved to the debtor an interest in the property which could not be reached by execution, and therefore enabled him to place this property beyond the reach of his creditors, they were void.    Elser v. Graber, 69 Texas, 225; Oppenheimer v. Halff, 68 Texas, 409; Seeligson v. Brown, 61 Texas, 180; Black v. Vaughan, 70 Texas, 47; Bank v. Douglas, 11 Sm. & M., 469; Bump. on Fraud. Con., p. 391; Mackie v. Cairus, 5 Cow., 547.

3.    Where a conveyance by its terms operates to hinder, delay, or defraud creditors, the intent to do so is imputed to the parties, and no evidence of intention can change that presumption.    A different intent can not be shown and made out by the reception of parol testimony, nor deduced from surrounding circumstances.    Elser v. Graber, 69 Texas, 225; Wait on Fraud. Con., 2 ed., secs. 9, 10, 322, 382; Farrow v. Hays, 51 Md., 505; Green v. Triber, 3 Md., 11; Malcolm v. Hodges, 8 Md., 418; Goodrich v. Downs, 6 Hill, 438.

4.    The statement of a particular consideration in cases of this character imports the whole consideration and is a negative to any other, and evidence to vary the consideration is inadmissible.    Bump. on Fraud. Con., pp. 354, 576, 577, 579; Sheldon v. Dodge, 4 Denio, 217.

5.    The testimony of an insolvent debtor that he offered to sell to his creditor property in satisfaction of his debt is inadmissible.    Bump. on Fraud. Con., p. 580; Tifts v. Bunker, 55 Me., 178; Fisher v. True, 38 Me., 534.

6.    A purchaser is chargeable with notice when he has knowledge of facts which would place one of ordinary prudence on inquiry and fails to make inquiry.    Traylor v. Townsend, 61 Texas, 144; Humphries v. Freeman, 22 Texas, 45; Mills v. Howeth, 19 Texas, 257; Wait on Fraud. Con., 2 ed., secs. 373, 379; Sterry v. Ardens, 1 Johns. Ch., 261, 267; Bartles v. Gibson, 17 Fed. Rep., 297, and cases cited.

7.    A debtor may convey property for the purpose of securing debts, and yet the conveyances may be fraudulent.    Reeves v. Shry, 39 Texas, 634; Hancock v. Horan, 15 Texas, 507; Bump. on Fraud. Con., p. 188; Welcome v. Balchelder, 23 Me., 85; Jaralawski v. Simon, 3 Brews., 37; Crowninshield v. Kittridge, 7 Met., 522; Baufield v. Whipple, 96 Mass., 13; Bar v. Hatch, 3 Ohio, 527; Bartels v. Harris, 4 Me., 146; Bullock v.

Irvine, 4 Mumf., 450; Giddings v. Sears, 115 Mass., 505; Johnson v. Whitewell, 24 Mass., 71; Bradley v. Ragsdale, 69 Ala., 595; Wait on Fraud. Con., 2 ed., sec. 207.

8. The deeds are fraudulent because that part of the consideration to be paid to Judah was a debt of the vendees as principals due Judah as well as of the vendor. Brown v. Hedge Co., 64 Texas, 400; Wait on Fraud. Con., 2 ed., sec. 232, and authorities in note 4; Bump. on Fraud. Con., p. 43.

9. In order to render a conveyance valid in a case like this there must be a creditor as well as a debtor, and H. T. Clare does not appear to be a creditor. The conveyance is therefore voluntary and void. Blum v. McBride, 69 Texas, 60; Greenleve v. Blum, 59 Texas, 124; Blum v. Simpson, 66 Texas, 84; Bump. on Fraud. Con., pp. 267, 268; Wait on Fraud. Con., 2 ed., sec. 200; Laughton v. Harden, 68 Me., 213; Hitchcock v. Kiley, 41 Conn., 611; Beecher v. Clark, 12 Blatch., 256; Savage v. Murphy, 8 Bosw., 75; Carpenter v. Rue, 10 N. Y., 227; Mohawk Bank v. Atwater, 2 Paige, 54; Savage v. Murphy, 34 N. Y., 508; Clark v. Chamberlain, 13 Allen, 257; Lee v. Figg, 37 Cal., 328; Lassiter v. Davis, 69 N. C., 498.

*L. H. Browne* and *John C. Beasley,* for appellees, cited Weaver v. Nugent, 72 Texas, 272; Lambeth v. McClinton, 65 Texas, 110; Clements v. Moore, 6 Wall., 299; Seeligson & Co. v. Brown, 61 Texas, 183; Ellis v. Valentine, 65 Texas, 544; Bump. on Fraud. Con., p. 577; Smith v. Whitfield, 67 Texas, 124; Jackson v. Cassidy, 68 Texas, 282; Yoe v. Montgomery, 68 Texas, 338; Blake v. Ins. Co., 67 Texas, 160; Albert v. Besel, 88 Mo., 150; Bump. on Fraud. Con., 537.

STAYTON, CHIEF JUSTICE.—Appellant was a judgment creditor of J. I. Clare, whose execution had been returned *nulla bona,* and it brought this suit to cancel two conveyances made by its debtor to H. F. Clare, one to P. S. and W. A. Clare, and another to P. S. Clare, and also to cancel a trust deed made by the debtor to H. T. Clare.

Cancellation was sought on the ground that J. I. Clare was insolvent at the time the several conveyances were made, and it was alleged that they were made to hinder, delay, and defraud plaintiff in the collection of the debt due to it when the conveyances were made.

No question was made as to the joinder of the several causes of action.

Defendants denied the insolvency of J. I. Clare, and alleged that the conveyances were made and received in good faith on adequate consideration, without notice of insolvency of J. I. Clare or any intent on his part to defraud his creditors, if such intent or insolvency existed.

They also pleaded specially their defenses, which are thus stated in brief of counsel with substantial accuracy:

"The defendant H. T. Clare, answering specially, admitted the execution of the deed of trust to secure his debt, as charged by plaintiff, but denied that the debt was pretended, and averred, when said deed of trust was executed said J. I. Clare was justly indebted to him in the sum of $4800.83, with interest thereon at ten per cent per annum from December 31, 1888; and that said trust deed was executed for the sole purpose of securing said debt.

"The defendant H. F. Clare, answering specially, admitted that he purchased of J. I. Clare, on the 25th of February, 1889, the property in Beeville, as charged by plaintiff, and he alleged that when he made said purchase said J. I. Clare was justly indebted to William M. Smith the sum of $3652, and to Kohler & Helenfels the sum of $600, with interest thereon at twelve per cent per annum from the 10th of June, 1888; that said debts were secured by a lien on the property he purchased; that in consideration of the sale and conveyance of the property to him, he assumed the payment of both said debts; that the consideration for said conveyance being the amount assumed was the fair value of said property; that he had acknowledged his liability to said Smith and Kohler & Helenfels, and had paid a part of the debt to Smith; that he owed no part of the consideration to said J. I. Clare, but that he owed it all, except the payment mentioned, to the said creditors of J. I. Clare, and that the sale was made to him in order to have said creditors paid.

"H. F. Clare, still specially answering, admitted that he purchased of J. I. Clare on the 4th of February, 1889, 991 acres of land, as charged by plaintiff, and he alleged that the consideration for the same was $3964, which was the fair value of the land; that at the time said purchase was made J. I. Clare was justly indebted to P. Dodridge & Co. in the sum of $1562.50, with interest thereon from December 16, 1887, at the rate of ten per cent per annum, and that at said time he was also indebted to one John M. Judah in a sum exceeding $5000, which was secured by a lien on the said 991 acres of land and other lands; that he himself owed no part of either of said debts, but was liable for both as security for J. I. Clare. That at the time he was negotiating with J. I. Clare for the purchase of said land, and at the time said sale was consummated, it was agreed and understood by and between him and J. I. Clare that the purchase money for said land was to be paid as follows: $2328.85 thereof was to be paid to John M. Judah on said debt from J. I. Clare to him, and $1635.15 thereof, being the balance of the purchase money, was to be paid on said debt of J. I. Clare to P. Dodridge & Co. That he did assume the payment to said Judah of said sum of $2328.85, and executed a promissory note for the sum of $1635.15, payable to said J. I. Clare or his order, which said note as soon as executed was, at his direction and in pursuance of the terms of the contract of sale, endorsed by J. I. Clare to said P. Dodridge & Co., and then delivered to P. Dodridge & Co.; that

said P. Dodridge & Co. were informed of the terms of the sale, and were satisfied therewith, and accepted said note, and are the owners and holders of the same.

" That the entire consideration for said land was paid to the said creditors of J. I. Clare, as stated, and that J. I. Clare was not to receive and did not receive any part thereof.

" The defendant P. S. Clare answered specially, admitting that he purchased of J. I. Clare, on the 4th of February, 1889, 4162 acres of land, as charged by plaintiff, and he alleged that the consideration for the same was $14,587.81, which was the fair value of the land; that at the time said purchase was made J. I. Clare was justly indebted to John M. Judah in a sum of money exceeding $14,000, with interest thereon from the 26th day of December, 1888, and that he was also justly indebted at that time to Isham Railey in the sum of $5117.69.

" That at the time he was negotiating with J. I. Clare for the purchase of said land, and at the time said sale was made, it was agreed and understood by him and J. I. Clare that the purchase money for said land was to be paid by him to said Judah and said Railey on their said debts.

" That the sum of $9801.57 was to be paid to said Judah, and the balance of the purchase money, to-wit, $4786.30, was to be paid to said Railey.

" That when said conveyance was made he did assume the payment of said sum of $9801.57 to said Judah on the debt of J. I. Clare to him, and that he executed two promissory notes, each for the sum of $2393.15, payable to the order of J. I. Clare, and the same were at the time of their execution, and under his direction and in pursuance of said agreement, endorsed by J. I. Clare to said Railey, and were delivered to him, and he is now the owner and holder of the same.

" That said Railey was apprised of the terms of said sale, and accepted said notes, and was satisfied with the security thereby obtained for his said debt; that the said debt to Judah was secured by a lien on the land purchased by him and on other lands; that he owed no part of either of said debts, but was liable for their payment as a surety of J. I. Clare.

" The defendants P. S. Clare and W. A. Clare answered specially, admitting that they purchased of J. I. Clare, on the 4th of February, 1889, 4058 acres of land as charged by plaintiff, and they allege that the consideration for the same was $13,361.57, which was the fair value of the land; that at the time said purchase was made J. I. Clare was justly indebted to John Gifford in a sum exceeding $9961.69, with interest thereon from the 26th day of December, 1888, and he was also then indebted to A. C. Jones in the sum of $3849.14; that they owed no part of said debts, but were liable for their payment as sureties of J. I. Clare; that the said debt of said Gifford was secured by a lien on said land purchased by them, and on other lands of J. I. Clare.

" That at the time they were negotiating with J. I. Clare for the pur-

chase of said land, and that at the time said sale was made, it was agreed and understood by them and J. I. Clare that the purchase money was to be paid to said Gifford and said Jones on their said debts; that the sum of $9961.69 thereof was to be paid to said Gifford, and the balance, to-wit, the sum of $3409.88, was to be paid to said Jones; that at the time the conveyance was made they did assume the payment to Gifford of said sum of $9961.69 on the debt of J. I. Clare to him, and they at said time executed their promissory note for the said sum of $3409.88, payable to said Clare or his order, and the same was at the time of its execution, under their direction and in pursuance of said agreement, endorsed by J. I. Claire to said Jones, who is now the owner and holder thereof; that said Jones was before the execution of said conveyance apprised of the terms of the same and was satisfied therewith; that they are bound to pay the entire purchase money to said Gifford and said Jones, and that J. I. Clare was not to receive any portion thereof, and did not receive any portion thereof."

These several answers presented good defenses, and this is not questioned on this appeal except in reference to one matter, which is thus presented in an assignment of error: "The court erred in overruling the exceptions by plaintiff to defendants' answer in this, that the court should have stricken from said answer all allegation setting up a parol agreement between all the parties to the several conveyances that the negotiable promissory notes payable to the order of J. I. Clare were to be applied to the payment of his, the said J. I. Clare's, debts."

It will be seen from the answers that each of the persons who purchased lands from J. I. Clare purchased such as were already covered with liens which the purchasers undertook to discharge, or that the purchasers were sureties for J. I. Clare for the identical debts which they assumed, and in most instances the land was already under lien and the purchasers also bound as sureties. Sureties so situated had the same right to purchase property at a fair price from J. I. Clare as would they have had had they been creditors, and so without reference to his solvency or intent. They had the right to protect themselves.

Those who purchased property for a fair price that was already covered by lien to its full value, with agreement to pay the debt thus secured by lien, could not practice a fraud on any person. That the agreement was in parol through which the several purchasers assumed the payment of the debts for which they or the property was already liable, or provided for the doing of this, did not invalidate such agreements. Such contracts are not forbidden by any statute of which we have any knowledge. The agreement was simply that they would execute notes to J. I. Clare, who, in order that his creditors should become the owners of them, would, as he did, by indorsement pass title to them. The agreement was as binding between the parties as though it had been in writing.

Appellant alleged that appellees knew of the insolvency of J. I. Clare when the conveyances were made, and on the trial many witnesses who were shown to have had ample opportunity to know what his financial standing and reputation was were permitted to state that he was regarded as solvent at that time.    We think there was no error in this.

It is urged that "the court erred in overruling plaintiff's objection to the testimony of the Clare brothers, and in permitting said Clare brothers to testify as to the contemporaneous parol agreement between said J. I. Clare and his said brothers, whereby it was understood and agreed that the negotiable promissory notes mentioned in the several deeds and executed by the said brothers to J. I. Clare or his order were to be appropriated to the payment of the debts of said J. I. Clare, as shown in plaintiff's bill of exception."    This has already been considered in noticing the objection to pleadings, and we see no reasonable ground on which objection can stand to appellees' showing that such steps were taken as would secure to creditors of J. I. Clare the entire sum they were to pay for the lands.

In the absence of given facts, the existence of which appellant was controverting, such evidence was vital to the defense, and appellees were entitled to bring it forward.

It seems to be contended that such evidence contradicted the deeds or notes, or both, and that for this reason it should have been excluded.

The deeds but declare the notes were executed, and the evidence confirms but does not contradict that fact.

The notes show that they were payable to J. I. Clare.    The evidence declares the same fact, but goes further and shows that in pursuance of an agreement made or existing at their execution they were at the same time endorsed to creditors.

It is urged that the court erred in refusing to charge the jury "that if they believed from the evidence that J. I. Clare conveyed to his codefendants, P. S. and W. A. and H. F. and H. T. Clare, the lands described in plaintiff's petition and admitted to be conveyed in defendants' answers, and that the purchasers in said conveyances executed and delivered their negotiable promissory notes for part of the purchase money for said lands payable to the order of J. I. Clare, and at the time of such conveyances said J. I. Clare was insolvent or in failing circumstances, and this fact was known, or by ordinary diligence or inquiry could have been known to defendants, and the said conveyances operated hinderance or delay to plaintiff in the collection of its debt, or interposed obstructions in the way of plaintiff enforcing its debt, demand, and judgment against J. I. Clare, then you will find for plaintiff."

This charge was not applicable to the only case the evidence tended to establish, and to have given it would have withdrawn the mind of the jury from the real issues in the case, for without disregarding all the evi-

dence the jury could not have found that the negotiable promissory notes were left subject to the control of J. I. Clare.

J. I. Clare may have been insolvent and this fact known to appellees, yet if they paid a fair price for the property and secured the proceeds to the creditors of their vendor, no fraud was committed against appellant.

It would have been but one method whereby the debtor gave preferences not invalid, if vendees had not been entitled to protect themselves as sureties for their vendor or the lands already covered by liens.

The case of Elser v. Graber differs from the present in this: here the purchasers saw that the notes executed by them enured to the benefit of creditors; while in that the vendee only had the promise of the vendor that the negotiable note executed should be applied to the payment of his debts. The other points of difference the facts suggest.

It was claimed that the conveyances to appellees were made with specific intent to defraud appellant, and evidence tending to show that J. I. Clare had offered to convey to it property at such prices as appellees bound themselves to pay tended to rebut this claim. The evidence had but very slight bearing on any issue really involved in the case, but on the question of fraud it can not be said that it was wholly irrelevant.

The court instructed the jury, in effect, if the several conveyances were made under the circumstances and for the purposes alleged by appellees, then they would not be fraudulent, and in this left out of consideration, as was proper, the questions of solvency and intent of J. I. Clare, but in other parts of the charge instructed the jury upon the question of intent of the vendor and knowledge on the part of the vendees of any fraudulent intent he may have had. The parts of the charge last referred to were applicable to the case in the event the jury found that the conveyances were not made under the circumstances and for the purposes alleged by appellees, and are not subject to the construction that if notice of the insolvency or intent of J. I. Clare became important this might not be shown by proof that appellees were in possession of facts which put them upon inquiry as to his solvency and intent in making the conveyances.

The controlling questions in the case seem to have been fairly submitted in the charge of the court, and there is no assignment of error which questions the sufficiency of the evidence to require a finding that the facts were as specially pleaded by appellees.

Appellant assigns as error the refusal of the court to give the following charges:

"1. If the jury believe from the evidence that at the time the defendant J. I. Clare conveyed his property by deeds to H. F. Clare, P. S. and W. A. Clare, and P. S. Clare, J. I. Clare was either in failing circumstances or insolvent, then you will return a verdict for plaintiff.

"2. If the jury find from the evidence that J. I. Clare was insolvent

at the time of making his deeds to H. F. Clare, P. S. and W. A. Clare, and P. S. Clare, they will return a verdict for plaintiff.

"3.   If the jury believe from the evidence that if the conveyances from J. I. Clare to H. F. Clare, P. S. and W. A. Clare, and P. S. Clare hindered or delayed plaintiff in the collection of its debt, you will return a verdict for plaintiff.

"4.   If you believe from the evidence that the defendants knew of J. I. Clare's failing circumstances, or by the use of reasonable diligence might have known, or were cognizant of circumstances which would have put a reasonably prudent man on inquiry, and failed to make such inquiry, then you will return a verdict for plaintiff.

"5.   There need be no fraudulent intent on the part of the defendants P. S. Clare and W. A. Clare and H. F. Clare in the acquiring of the lands in controversy, and still if the conveyances hindered or delayed plaintiff in the collection of its debt they are void, and you will return a verdict for plaintiff."

Having stated the issues made, and there being no claim that the evidence does not sustain the special pleas, the impropriety into which the court would have fallen had these charges been given is patent.

If, however, the case had stood stripped of the facts that appellees were sureties, and the property encumbered with debts which they assumed, there was not more than one of the requests which could with any show of propriety have been given.

The first would have entitled appellant to a verdict if the vendor was in failing circumstances or insolvent, whether this was known or ought to have been known to appellees.

So with the second.   The third would have entitled appellant to a judgment if in fact the conveyances hindered or delayed appellant in the collection of its debt, without reference to whether, within the meaning of the law, the conveyances were fraudulent.

The effect of the fifth would have been the same.

·  The fourth would have entirely excluded the defenses specially pleaded, if appellees knew or ought to have known that their vendor was in failing circumstances.

These charges were not asked as parts of a proper charge but as separate and entire propositions.

It is claimed that the court further erred in refusing to give the following charge: "If the jury believe from the evidence that if the consideration for the conveyances from J. I. Clare to H. F. Clare, P. S. Clare and W. A. Clare, and P. S. Clare, was, or a great portion of it was, the assumption of a debt secured by a mortgage on the land conveyed, and P. S. and W. A. Clare, and P. S. and H. F. Clare were not bound to protect J. I. Clare from all claim by reason of the mortgage notes or mortgage on said land, then under the testimony these conveyances are

void, and it will not aid them that it is recited in the same conveyances that the purchasers assume the mortgage."

It appears from the evidence that J. I. Clare and the others named in the above request borrowed a sum of money from Judah, to secure which they each executed mortgage on his own property and joined in one note, but the money was unequally divided between them; J. I. Clare receiving the sum stated in special pleas.

While all were bound to the lender, as between themselves each was primarily bound for the money by him received, and from that standpoint had the right to protect himself.

The assumption of the sum for which J. I. Clare, as between themselves, was liable, was, in effect, the assumption of debt for which they were securities for him; the consideration was sufficient, and the fact that J. I. Clare may not have been relieved from personal liability for the sum due to the lender from the others was one in which appellant had no interest. The transaction placed no encumbrance on any property owned by J. I. Clare to secure the payment of the sum due from the others, but left the property which he conveyed to them encumbered as it was before—his debts, however, assumed by them and to be paid as the consideration for the encumbered property.

We do not understand that a creditor has any legal interest in having a debtor released from a mere personal obligation for the debt of another. The continuance of such an obligation removes none of the debtor's property from the creditor's reach.

If the conveyances had been made on consideration that appellees would pay only what as between themselves was due by them to the lender, a very different question would arise. The effect of the whole transaction, looking to their obligation then existing, was to bind them to pay the entire sum due the lender. For this they became personally bound to J. I. Clare, as were they before to the lender, and all the property remained bound, as was it before, for the entire debt.

The eighth special charge was correct as an abstract proposition, but to have given it in this case would have been more likely to mislead the jury than otherwise.

The tenth and eleventh charges were based on states of fact not shown to exist, and were properly refused for this reason, and besides were erroneous. The first contained the proposition that a transfer by a debtor of all his property to relatives was a badge of fraud, without reference to the purpose or consideration for which the conveyance was made. The latter has no application to facts found in the case, but upon an assumed state of facts, whose relations it is difficult to perceive as the charge is drawn, declared as a matter of law that a fraudulent transaction would exist.

The remaining assignment is that "the court erred in overruling plaint-

iff's motion for a new trial," which was based on eighteen different grounds. Such assignments can not be considered.

The debt on which appellant's judgment was rendered was secured by a deed of trust on cattle, under which a sale was made, on account of which J. I. Clare sought to establish a credit for $10,000, which appellant resisted; but this matter the court below declined to submit to the jury, and without appeal, or even an assignment of error, J. I. Clare now seeks a revision of the action of the court in this respect. That this he can not have as the case is presented is clear.

We find no error in the judgment, and it will be affirmed.

*Affirmed.*

Delivered February 7, 1890.