## A. C. KING ET AL. v. L. D. PARKS ET AL.

### Decided April 27, 1901.

**1.—Venue—Indorser of Accommodation Note—Issue of Suretyship.**

Where an indorser of a note residing in a county other. than where suit thereon was brought was properly made a party, the fact that plaintiff dismissed as to such indorser did not warrant the court in then sustaining the indorser's plea of privilege to be sued in his own county, where the other defendant had pleaded that the note was in fact an accommodation note, given for the indorser's benefit, by virtue of which he was in equity the real principal therein, and such defendant only surety,—it not appearing that the trial of such issue of suretyship would have unreasonably delayed plaintiff's suit. Rev. Stats., art. 3813.

### ON REHEARING.

**2.—Accommodation Note—Right of Holder.**

That a note was an accommodation note and the maker a surety for the payee will not affect the right of a subsequent holder to enforce it against the accommodation maker, though the holder may have known of its accommodation character at ·the time he took it.

**3.—Same—Release of Accommodation Payee.**

But where such subsequent holder, knowing that the note was given to accommodate the payee, his indorser, releases such payee, this operates to release the maker also.

Appeal from Erath. Tried below before Hon. B. M. Estes, Special Judge.

*Homer R. Mitchell,* for appellants King and Palmer.

*Daniel & Keith,* for appellant American Surety Company.

*Lee Young, A. P. Young,* and *Robertson & Robertson,* for appellee.

CONNER, CHIEF JUSTICE.—As originally instituted on the 7th day of February, 1898, it appears that this suit was an action by the appellee, L. D. Parks, upon a certain promissory note executed by A. C. King in the sum of $2000, bearing interest at the rate of 10 per cent per annum from its date, which was November 17, 1896. The note was made payable to Dan T. Frye on the 1st day of January, 1897, at the Dublin National Bank, in Erath County, Texas. Plaintiff also sought to foreclose the lien given by said A. C. King to secure said note upon certain described law books of the aggregate value of about $3000. It was alleged that Parks, for value, before maturity and in due course of trade and by indorsement, had acquired said note and mortgage; that one N. W. Palmer was in possession of the books, asserting some kind of claim thereto. King and Palmer were acordingly duly cited, and answered in the suit. Frye, who was alleged to have indorsed said note to appellee Parks, was not cited or declared against.

King and Palmer answered, in substance, by duly verified plea: that as between Frye and King there was no consideration for said note and mortgage; that King was a mere accommodation maker for the benefit of the said Dan T. Frye, who desired therewith to secure credit and means of continuing his own, business; that therefore Frye, by the indorsement to Parks, became the principal obligor in the obligation sued upon,—of all of which they alleged Parks had notice before the indorsement to him of said note; that the plaintiff, L. D. Parks, had theretofore, for a valuable consideration, released the said Frye on the said note and refused to sue him; and they prayed to be discharged, but also prayed that said Frye, who was a resident of Bosque County, Texas, be cited to answer their said plea, and that in the event the plaintiff recovered judgment against them, they have judgment against Dan T. Frye in like amount.

L. D. Parks caused the books mentioned to be sequestered, and King and Palmer replevied the same, giving as surety on the replevy bond the American Surety Company, a corporation. The case was continued from time to time until the January term, 1900, of the District Court, when the appellee Parks filed his amended petition declaring as before, and further declaring against Dan T. Frye as the indorser of the said note, specially alleging that while plaintiff had made a contract with Frye not to sue him, which contract was attached to the amended petition as an exhibit, he had not contracted to release him, and that if said contract between the plaintiff and Frye was to be construed as a release then, in such event, plaintiff declared he was without notice of the accommodation character of the note; that Frye had fraudulently concealed the facts

from plaintiff at the time of his acquisition of said note for which he had paid full value, and prayed that he have judgment against him as indorser.

The American Surety Company at the same term intervened in the suit; adopted the answer of King and Palmer, and alleged that in fact Frye, who in the meantime had been cited to answer the cross-action of King and Palmer, was a joint owner with King and Palmer of the books mentioned; that since the replevy of the same, as hereinbefore stated, the books had been sold and placed beyond the reach of the process of the court, whereby it was impossible to have them forthcoming should the court adjudge that it be so done; that Frye was the recipient of the value of the property replevied, and the surety company prayed for judgment against Frye in the event the plaintiff in the suit recovered judgment as prayed for.

Frye appeared and presented a plea of privilege alleging his residence in Bosque County, and negativing all statutory exceptions authorizing suit against him in any other county.

It further appears that Palmer and King, who at the time of the institution of the suit were residents of Erath County, had removed therefrom, and were not present in person, and that their ex parte depositions, taken at the instance of the plaintiff, and which had been on file up to within a few days of the trial, were missing. The American Surety Company by counsel made application for continuance, setting forth the necessity of King and Palmer's testimony and the absence of said depositions. This was overruled. Plaintiff Parks abandoned his prayer for recovery as against Frye, and the court thereupon entered judgment sustaining said plea of privilege and dismissed Frye from the suit. Verdict and judgment thereupon followed in favor of appellee L. D. Parks against A. C. King for the principal, interest, and attorney's fees on said note in the sum of $3083.65, with a foreclosure of said mortgage lien upon the law books mentioned as against A. C. King and N. W. Palmer, and against King, Palmer, and said surety company upon said replevy bond for the sum of $3334, the value of the property sequestered, as found by the jury, with interest thereon; providing, however, that in case the property replevied was forthcoming as provided by the statute, the judgment against the sureties should not be enforced, and in no event should be enforced against them except for such part of said judgment in favor of Parks as said sureties should be required to pay, and that for such payment as they were required to make they should be subrogated to all rights of the plaintiff.

The pleadings and record are somewhat voluminous, but the foregoing is believed to present in outline such statement as is necessary to illustrate the conclusion to which we have come. King, Palmer, and the American Surety Company have appealed.

The action of the court in sustaining said plea of privilege, in overruling the application for continuance, and in other matters have all been

assigned as error. We will, however, but briefly discuss a single assignment, viz., the one complaining of the action of the court in sustaining the plea of privilege and in dismissing said Frye from the suit.

In this we think the court in error. If the facts stated in the pleadings of appellants were true, then, while as between Parks and King, the latter was a principal, yet as between King and Frye, in equity King occupied the relation of a surety.

Our statute provides that: "When any suit is brought against two or more defendants upon any contract, any one or more of the defendants being surety for the others, the surety may, upon a written statement of the matter being set out in his answer, cause the question of suretyship to be tried and determined upon the issue made for the parties defendant at the trial of the cause, or at any time before or after the trial, or at a subsequent term; but such proceedings shall not delay the suit of the plaintiff." Rev. Stats., art. 3813.

Frye in fact had been cited, and, subject to his plea of privilege, had filed an answer. He testified on the trial. No denial is made by him in his testimony of the special matter set up in the answer of Palmer and King, which by adoption was made the answer of the American Surety Company. His testimony tended to establish the facts as to the dispersion of the mortgaged books as set up in the answer of the American Surety Company, and no reason appears why a determination of the issues as presented by the special pleas might not then have been determined without unnecessary delay to the plaintiff in this suit. We do not think that appellee, by an abandonment or withdrawal on the hearing of the allegations of his amended petition presenting the liability of Frye, could thereby defeat the rights of appellants to a trial upon the issues by them presented. Appellee Parker on the trial offered to permit appellants to read as evidence a copy of the original deposition of King that had been lost, and to substitute in any way in which it could be done the deposition of Palmer, which had also been lost. But, among other things that may be said as to this, it would be manifestly of no avail to appellants to establish the facts alleged by them in the several answers named in the event appellee sustained his allegation that the note had been acquired by him for value before maturity and without notice of the matters plead by appellants. In such event, Frye having been dismissed, as against him the court would have been without power to have adjudged to the defendants, or any one of them, any relief. It is not questioned that the suit was properly instituted in the District Court of Erath County,—the note in the first place, by its terms having been made payable in that county, and by reason of the further fact that King and Palmer both were residents of that county at the time of the institution of the suit. Authorities need not be cited for the proposition that Frye's general privilege of being sued in the county of his residence must in such case yield if he was either a necessary or proper party. The policy of our law and the practice in such cases, we think, require that the entire matter in issue between the parties be set-

tled in this suit. See Skipwith v. Hurt, 94 Texas, —, 60 S. W. Rep., 423; Eustis v. Fosdick, 88 Texas, 616; Pope v. Hays, 19 Texas, 375; City of Fort Worth v. Allen, 10 Texas Civ. App., 488, and authorities there cited. As also perhaps tending to support the views expressed, see: 2 Pars. on Bills, 27; Teid. on Com. Paper, sec. 158; Bennett v. Dowling, 76 Texas, 660; Aultman v. Hefner, 67 Texas, 62; Weir v. Brooks, 17 Texas, 639, fourth head note.

As before stated, other questions presented by the assignments need not be discussed, as the errors of which complaint is there made will not probably occur upon another trial.

For the error discussed the judgment is reversed and cause remanded for a new trial.

*Reversed and remanded.*

ON MOTION FOR REHEARING.

Omitting treatment of some immaterial verbal inaccuracies in the original opinion, we desire to correct the statement therein made that it was alleged in the answer of King and Palmer that the want of consideration and the accommodation character of the note sued upon was known to L. D. Parks before the indorsement thereof to him. This should have been that it was alleged that Parks had notice of these facts prior to his alleged release of Frye. This inaccuracy of statement, however, is immaterial to the conclusion reached on the original submission. If in fact Parks released Frye, as alleged, after notice of the true relation of King to the note, it would seem to constitute a release of the sureties as pleaded. This, among other issues, was raised by the surety company, and whiile it is true, as has been called to our attention on rehearing, King and Palmer did not join in the execution of the appeal bond, they are parties thereto in terms, and they are so related to the issues and case made as that we continue to think it best to remand the cause as to all parties. See Burleson v. Henderson, 4 Texas, 59; Wood v. Smith, 11 Texas, 367; Willie v. Thomas, 22 Texas, 176; Dickson v. Burk, 28 Texas, 118.

While we think it quite improbable that it can be misleading on another trial, we perhaps should add, in view of the position of appellees in the motion for rehearing, that the ninth paragraph of the original opinon should be limited to the particular issue then under discussion. By the statement that, "if the facts stated in the pleadings of appellants were true, then, while as between Parks and King the latter was a principal," we did not intend to convey the idea that in no contingency could King avail himself of his right as surety against Parks. The mere fact that the note was an accommodation note, and that King's real relation thereto was that of surety for Frye, will not affect Parks' right to enforce the note against King as a principal. As alleged, King executed the note with the specific purpose that it should be negotiated, and that Frye should thereby secure means and credit. When this purpose was accom-

plished by the indorsement and sale to Parks, a consideration for King's execution of the note existed,—the very consideration contemplated by King,—and he thereby became bound to Parks as a maker, even though Parks may have known of the accommodation character of the note at the time he took it. King's true relation to the note, however, remained, and if, as alleged, Parks with full knowledge gave absolute release to Frye, the read principal, then, as stated, we think the surety would be released. In the case of Hardware Company v. Wells, 90 Texas, 110, our Supreme Court reviews the conflicting authorities and holds that one of two principal debtors, by subsequent agreement with his codebtor, can not without consent of the creditor change the character of his liability from principal to that of surety so as to avail himself of the remedies provided in articles 3660 and 3661, Revised Statutes. In a memorandum opinion delivered February 2, 1901, in the case of Osborne & Co. v. Thompson, we held that a creditor releasing the real principal upon an obligation in which said principal and another appeared as joint and several obligors, thereby discharged the other joint obligor who, as between the makers, was but a surety. This holding was upon the ground that, while as to the creditor both joint makers were principals, as between themselves, as to the debt involved in that case, they bore the relation of principal and surety, and that the creditor, D. M. Osborne & Co., having accepted the obligation with knowledge of the relation stated, thereby in effect became a party to the contract of suretyship existing between the joint obligors. A writ of error was refused in that case. If, therefore, Parks at the time of the purchase of the note in question knew of its accommodation character and of King's real relation thereto, he could not thereafter disregard King's rights to the extent of absolutely discharging the real principal. We see no reason why the same rule should not apply in this case if Parks had notice subsequent to the indorsement, but prior to the alleged discharge of Frye. It is not the case where one of two principal obligors by subsequent agreement undertakes to change his real relationship to the contract or creditor. King's original undertaking was in fact that of a surety, though on the face of the contract he appeared as a maker, and as said in effect in Hardware Company v. Wells, supra, notice to Parks, the creditor, does not have the effect of changing the contract; it remains as in fact originally undertaken, the notice merely removing the legal impediment to enforcing its terms. The court distinctly approves what was said by Chief Justice Cooley in Oakley v. Pashellor, 4 Clark & F., 207, to the effect that the rights of a debtor whose original obligation is in fact that of a surety can not be disregarded by the creditor after notice of the true relation. The following further authorities might also be consulted in this connection: Zapuluc v. Zapp, 22 Texas Civ. App., 375; Bank v. Clare, 76 Texas, 47; Barks v. Cruger, 8 Texas, 67; Brandt on Sur., sec. 32, and the cases therein cited.

We think the motion should be overruled, and it is so ordered.

*Overruled.*