## SMITH v. MAGALIS. (No. 10221.)

Court of Civil Appeals of Texas. Dallas. Dec. 8, 1928.

Rehearing Denied Feb. 2, 1929.

Davis, Synnott & Hatchell, of Dallas, for plaintiff in error.

Dwight Lewelling, of Dallas, for defendant in error.

VAUGHAN, J. This suit was instituted in the court below by Ben W. Smith, plaintiff in error, as plaintiff, against R. E. Magalis, defendant in error, as defendant; therefore the parties will be referred to as plaintiff and defendant.

The plaintiff declared upon a promissory note executed by the defendant, payable to the order of one G. E. Spera, and secured by a vendor's lien upon certain lots located in the city of Dallas, described in said petition. The plaintiff appropriately alleged that he was the holder of said note in due course of trade for value, and the actual bona fide holder and owner thereof; that it was due and unpaid; that he had been compelled to place said note in the hands of an attorney to enforce the collection thereof, and had contracted to pay said attorney the attorney fee stipulated for in said note. It was further alleged that the lien to secure said note had been exhausted, in that the land on which said lien had been created had been sold under a prior lien foreclosure, and therefore no foreclosure of lien was sought.

Defendant, by his answer, pleaded general denial, that the note sued upon was executed by him purely as an accommodation for one G. E. Spera, the payee named in said note, and alleged certain acts of fraud as having been committed by one H. C. Wilson and said Spera in procuring the execution of said note by defendant, also charged plaintiff with knowledge of such fraudulent conduct, and further alleged that plaintiff and said Spera and Wilson acted in collusion to perpetrate a fraud against defendant, and also alleged that plaintiff acted in collusion with other parties to defraud him, and further alleged that plaintiff knew of the facts surrounding the transactions leading up to and including the execution of the note sued upon when he bought same, and that plaintiff did not pay Spera a valuable consideration, and that plaintiff acquired no title because of his knowledge of the nature of the transaction, that, prior to plaintiff's purchase of the note, he employed an attorney to look into the matter for him, to wit, one Ross M. Scott, and that Ross M. Scott was fully informed as to the nature of the transaction, namely, that it

was purely an accommodation transaction, and that it was so understood between all of the parties. He further alleged that the acknowledgment of Spera's wife to the deed was not taken in the manner required by law. Defendant, in aid of his charges of fraud, pleaded the fraudulent acts alleged by Spera in his petition filed against plaintiff and one H. C. Wilson to cancel the note sued upon and the deed of trust executed by Spera to Magalis and likewise pleaded the allegations of fraud contained in the petition filed by plaintiff against Ross M. Scott to recover from said Scott damages claimed to have been sustained by plaintiff on account of certain representations alleged to have been made by Scott to plaintiff as to the value of the land the debts secured by liens thereon against same, which induced him to purchase the note. Under the view we take of the case, it is not necessary to further notice the pleadings filed in said suits, as the allegations of said respective petitions deal with matters that occurred after plaintiff became a holder in due course of the note sued upon, and no evidence was introduced in support of same.

After the introduction of evidence had closed, plaintiff requested the court to instruct the jury as follows: "You will return a verdict for the plaintiff, Ben W. Smith, against the defendant, R. E. Magalis, for the sum of $6,000.00, being the amount of principal, interest and attorney fees of the note sued upon."

This peremptory instruction was refused, to which action of the court plaintiff duly reserved his exception, and by further proceedings is properly before us for review and revision.

Following are the special issues submitted and answers made thereto by the jury:

(1) Was Ross M. Scott acting for or on behalf of the plaintiff in the purchase of the note sued on? Answer: "Yes."

(2) Was Ross M. Scott authorized to act for or on behalf of the plaintiff in the purchase of the note sued on? Answer: "Yes."

Plaintiff in due time and form filed his motion for judgment to be rendered in his favor on said verdict. This motion was overruled and judgment rendered against the plaintiff, denying him the right of recovery on his cause of action.

If, under all of the facts established by the evidence, plaintiff was a purchaser in due course of trade of the note sued upon, this cause should not have been submitted to the jury, but to the contrary plaintiff's request for an instructed verdict in his favor should have been granted.

We find the following to be all of the material facts established by the evidence introduced upon the trial of this cause that was properly admissible:

On the 23d day of July, 1921, the note for $3,500 sued upon was executed by defendant to one G. E. Spera as accommodation paper. Defendant was not indebted to said Spera in any sum and was not to receive any personal benefit on account of the execution of the note. Defendant had a friendly interest in Spera, and at his request executed the note to enable Spera to obtain money thereon with which to complete his residence then being constructed on exempt real estate. In reference to the circumstances surrounding the execution of the note, defendant testified as follows: "Mr. Spera invited me over to see his new home quite a number of times. I went over there several times. He did not mention to me helping him in any way the first time I saw the home, but two or three months later, when the house was almost completed, he said that he was short of money, and that he had made a first lien on the place and he did not have enough money to complete the place, and he needed extra money. He said he needed $3,500.00 and asked me if he could deed this property to me and I make a note for $3,500.00, which would be a second lien against the property; then he could sell this note and get this $3,500.00. He told me at the time that there was $11,000.00 against this house and I believed that statement. I considered the property worth somewhere around $25,000.00 or $30,000.00, and felt perfectly safe in signing this note."

Spera and wife, on the 23d day of July, 1921, executed their general warranty deed, purporting to convey to Magalis lots Nos. 8, 9, and 6 and 50 feet off of the north side of lot No. 5, in block 3020–39, as shown by the official map of the city of Dallas. Foreclosure of lien was not sought on the property so conveyed. The note sued upon was described in said deed as part of the purchase money contracted to be paid by said defendant for the tract of land described in said deed and note secured by the vendor's lien on the property described in said deed. On the 3d day of August, 1921, defendant executed a deed of trust to one E. A. Gillam, as trustee, conveying to said trustee in trust the tract of land described in the deed from Spera and wife to defendant to secure Spera in the payment of said note. Said deed of trust was duly acknowledged and filed for record with the county clerk of Dallas county on the 3d day of August, 1921. It was agreed between Spera and defendant that defendant would deed the property back to Spera as soon as the loan of money was obtained on the $3,500 note. Defendant knew that the property conveyed to him as security for said note was Spera's homestead. The property, in accordance with the agreement, was reconveyed to Spera by deed of date, August 4, 1921. Magalis had no actual notice at the time he executed the note sued upon that the indebtedness secured by liens against the property conveyed to him was in excess of $11,000. Later on he learned of other indebtedness; his testimony in reference thereto being as

follows: "A long time after that I found that the house was plastered over with liens and that there was a great deal more of indebtedness against it."

A few days after said note was executed and prior to the purchase of same by plaintiff, defendant had a conversation over the telephone with Mr. Ross M. Scott, viz. said Scott called defendant and asked him if the conveyance made by Spera and wife to him was a straight sale. Defendant replied that it was just simply an accommodation sale. Mr. Scott said, "All right, that is all I want to know." Defendant testified that, in said connection, "Mr. Scott told me that he was examining the papers in this transfer of Spera to me and that he was thinking of purchasing this note, or his client was thinking of purchasing this note, and he was examining the papers and wanted to get my say-so about whether it was a safe sale or not. I am pretty sure that it was less than two weeks after I signed the note that Scott called me up.. I would say that it was within ten days or two weeks, not over two weeks."

Defendant did not receive any notice of the foreclosure proceedings under the first lien, and did not learn of such foreclosure proceedings until probably a month thereafter. Spera first told defendant about the foreclosure. Plaintiff had notice that the prior lienholder was proceeding to foreclose his lien, but did not communicate such information to defendant.

The following statement, in reference to the execution of the note sued upon, was signed and delivered by defendant to H. C. Wilson: "August 7, 1921, H. C. Wilson, Dallas, Texas: I made note for $3,500.00 for one year, payable to G. E. Spera, secured by Deed of trust on property at 835 North Marsalis Avenue, same being part of the purchase price. This note will be paid at maturity."

As to the discrepancy in the date of the above statement and the date of the note, and as to why said statement was executed, defendant testified as follows: "That 835 North Marsalis Avenue meant that property over there where Mr. Spera was building his home. My recollection is, that I signed that letter at the same time I signed the note and deed of trust, and I do not know why there is a discrepancy in the dates. I made that statement in the letter, that I executed this note, and that it was part of the purchase price, and that the note would be met at maturity, so that it would enable Wilson to secure this money for Spera. I did it in order to help Wilson sell that note to somebody."

As to the time when the above statement was received by plaintiff, he testified as follows: "Mr. Scott handed me this statement from R. E. Magalis at the time I bought the note. I saw this paper before I bought the note."

Said note was before maturity indorsed, transferred, and delivered by said Spera to one H. C. Wilson and before maturity was indorsed, transferred, and delivered by said Wilson to plaintiff. On the 4th day of August, 1921, Spera executed a conveyance of said note, vendor's and deed of trust liens existing to secure the payment of said note to H. C. Wilson, and, on the 6th day of August, 1921, said Wilson executed a conveyance of said note, vendor's and deed of trust liens to plaintiff, Ben W. Smith.

Following are the facts under which the note was acquired by plaintiff, as testified to by him: "Some time in July, 1921, Ross M. Scott called me over the telephone at my home and stated that he had a note for sale, that it was a good note and thought I might be interested, and asked me to drop by his office so he could talk to me about it. I went to his office the next day and he showed me a $3,500.00 note and told me that it was signed by R. E. Magalis, who was in the drug business, and that so far as he knew he was a good substantial man and stood well with his creditors. Mr. Scott said that he had been representing a man by the name of H. C. Wilson, who was the owner of the note, and that Wilson owed him a fee and that, if he could dispose of the note, he would be able to collect the fee. Mr. Scott told me it was a good note and I bought the note. The next morning, about 9:35 a. m. o'clock, Mr. Scott went with me to the Liberty State Bank and I gave the Liberty State Bank my check for $2,500.00 and the Liberty State Bank issued cashier's check for $2,500.00, payable to Ross M. Scott, and I got the note. The note had already been endorsed as it is here, and Mr. Scott delivered to me a transfer of lien which I was to put on record. I paid $2,500.00 for the $3,500.00 note, which was a discount of something like 30% or a little less. That was about the customary discount at that time for a second lien note. The note I bought was secured by a second lien on the property conveyed by Spera and wife to Magalis. The check I gave for the $2,500.00 was paid. About 15 days before the note was due I notified Magalis that I owned it. The property had been sold and was worth about $25,000.00 and all of the liens against it figured more than that."

Of the several defenses measurably presented by defendant's answer, only one found any degree of support through the facts established by the evidence introduced, namely, that defendant executed the note declared upon as a matter of accommodation to Spera, and that plaintiff had notice of that fact before he acquired said note.

Section 29 of article 5933, R. S. 1925, provides that: "An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or endorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at

the time of taking the instrument knew him to be only an accommodation party."

■ The evidence clearly established that defendant signed the note sued upon as maker without receiving value therefor, but for the purpose of lending his name to the payee therein, namely, G. E. Spera. Therefore defendant is liable to plaintiff on the note sued upon, provided he acquired same in good faith and for value. Section 52 of article 5935, supra, defines a holder in due course to be one who has taken the instrument under the following conditions: (1) That it is complete and regular upon its face; (2) that he became the holder of it before it was overdue and without notice that it had been previously dishonored, if such was a fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defects in the title of the persons negotiating it.

The note sued upon is complete and regular upon its face. Defendant became the holder of it before it was overdue, and it had never been previously dishonored. He took it in good faith and for value, and at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person who negotiated it to him.

The above conclusions are supported by uncontroverted evidence. Whatever additional facts, concerning the execution of the note, that came to the knowledge of plaintiff after the note was negotiated to him, of any infirmity in same or defect, if any, in the title thereto of Wilson, who negotiated it to him, could not prevent him from being a holder in due course; for knowledge of such facts must have been conveyed to him before or at the time the note was negotiated to him.

■ The knowledge of Ross M. Scott as to the execution and handling of the note prior to the time plaintiff acquired same, viz. that the conveyance of the homestead property of Spera and wife to Magalis was a simulated or fictitious transaction, that the note sued upon was executed by Magalis as an accommodation to Spera without any consideration, could not prevent plaintiff from becoming a holder in due course for value, he having paid the sum of $2,500 cash for the note, same being a reasonable value for second lien paper, and having purchased it in good faith. Therefore the findings of the jury, in reply to the two questions submitted, being in effect that Ross M. Scott was acting as the agent and attorney of plaintiff when he was negotiating for and acquired the note, could not form the basis for the rendition of the judgment denying plaintiff the right of recovery against defendant, Magalis. The court erred in overruling plaintiff's special charge requesting the jury to return verdict in his favor. King v. Parks, 26 Tex. Civ. App. 95, 63 S. W. 900; Milmo Nat. Bank v. Cobbs (Tex. Civ. App.) 128 S. W. 151; Van Alstyne, Executrix, v. Sorley, 32 Tex. 518; C. J. vol. 8, p. 265, § 414; Id. p. 260; Id. p. 262.

It appearing from the record that the case was fully developed, it devolves upon this court to render the judgment that the court below should have rendered. Therefore the judgment of the lower court is reversed, and judgment is rendered in favor of plaintiff against defendant for the sum of $3,500, the amount of principal, the sum of $2,079.60 interest, and the sum of $557.96 attorney fees, due on the note sued upon, with interest from this date on $5,579.60, at the rate of 10 per cent. per annum and on $557.96 at the rate of 6 per cent. per annum, together with all costs incurred in the court below and in this court.

Reversed and rendered.