COURCHESNE v. SANTA FÉ FUEL CO. et al.

(Court of Civil Appeals of Texas. El Paso. March 27, 1913.)

1. INJUNCTION (§ 26*) — STAYING SUITS — RIGHT TO RELIEF.

Injunction does not lie to stay prosecution of a suit merely because there is no cause of action to sustain it, nor to enjoin assertion of a cross-action where no fraud in prosecuting it is claimed.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 24–49, 54–61; Dec. Dig. § 26.*]

2. INJUNCTION (§ 26*) — STAYING SUITS — RIGHT TO RELIEF.

That judgments of a justice court or of a county court would be final in certain suits brought in justice court does not authorize the county court to enjoin prosecution of such suits.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 24–49; 54–61; Dec. Dig. § 26.*]

3. PARTIES (§ 54*)—CROSS-ACTION—RIGHT TO PROSECUTE.

A defendant is entitled to maintain a cross-action to bring in a party who he claims is liable over to him in the event that any judgment be rendered against him.

[Ed. Note.—For other cases, see Parties, Cent. Dig. § 85; Dec. Dig. § 54.*]

Appeal from El Paso County Court; Ballard Coldwell, Special Judge.

Action by A. Courchesne against the Santa Fé Fuel Company and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Peyton F. Edwards and O. L. Bowen, both of El Paso, for appellant. McBroom & Scott, of El Paso, for appellees.

HIGGINS, J. On July 29, 1912, the Santa Fé Fuel Company entered into a contract with V. A. Lucier by the terms of which Lucier obligated himself to quarry and deliver to said company at its lime kilns sufficient rock to supply the same to their maximum capacity; the said Lucier to furnish all necessary teams, labor, material, and facilities for quarrying and transporting said rock, which contract was to continue for a period of two years, but contained a provision giving either party the right to terminate the same by giving 15 days' notice. Lucier further obligated himself to give bond in the sum of $500 to secure the faithful performance of his obligations under the contract. On the same day Lucier gave bond, with A. Courchesne as surety, and thereafter entered upon the performance of the obligations assumed by him. About the 7th of October, 1912, he abandoned his contract and refused to further perform his obligations thereunder, whereupon Courchesne, as surety, proceeded to fulfill Lucier's obligations thereunder, and, in accordance with the terms of the contract, gave notice of intention to terminate the same, and in accordance with such notice the obligations of Lucier under such contract terminated on October 26, 1912. At the date Lucier abandoned his contract he was indebted in various amounts to various laborers who had been employed by him in quarrying and transporting rock, and at said date the Santa Fé Fuel Company was indebted to Lucier upon such contract in the sum of $136.92. It is alleged in the answer of the Santa Fé Fuel Company that when Lucier abandoned his contract he advised his laborers that the company would pay them the various amounts due them, whereupon such laborers demanded payment of the company, and the company informed them that it did not have sufficient funds on hand belonging to the said Lucier to pay their claims in full, but would prorate among them the amount which was due the said Lucier; that when settlement was made with Courchesne there was due Lucier said $136.92, and there was also due certain moneys to said Courchesne on account of the part performance by him of such contract; that in making settlement with Courchesne the agent of the company gave to Courchesne a check for the full amount due Lucier as well as the amount due himself, the amount due Lucier being so paid under the mistaken belief that Courchesne was entitled to collect the same as Lucier's surety, and overlooking the former promise made by the company to such laborers that it would prorate and pay to them the amount due the said Lucier; that immediately after delivering the check to Courchesne, and while he was leaving the premises of the company and before the check had been cashed, the company's agent stated to him that the payment made to him included the amount due Lucier and demands were being made by laborers of the company for payment of their wages and that the company should be protected against such laborers' claims by reason of such payment to him, and thereupon Courchesne agreed to protect the company against such labor claims to the extent of the payment made to him, and relying upon such promise the company permitted Courchesne to cash said check and receive payment of the moneys due to Lucier.

Eight suits were instituted in the justice

---

court before Justice of the Peace James J. Murphy by eight of said laborers against the company for the recovery of the several amounts due them for labor by Lucier, the amount involved in each of said suits being less than $20, and were numbered 1,760, 1,761, 1,762, 1,763, 1,764, 1,765, 1,766, and 1,767 upon the docket of said court; and like suits were filed by laborers in the justice court before Justice of the Peace E. B. Mc-Clintock in causes numbered 3,216, 3,217, 3,218, 3,219, 3,220, and 3,221 upon the docket of said court, the amount involved in cause No. 3,216 being $3.25, and in the remaining causes in the court of Justice Mc-Clintock being for various amounts exceeding $20 and less than $50. The total amount sued for in the causes pending in Justice Murphy's court being $104.99, and the total amount sued for in Justice McClintock's court being $210.60. In said causes Nos. 1,760, 1,766, and 1,767 the company made Courchesne a party defendant, and by way of cross-action over against him set up the contract between it and Lucier above described and the execution of above-mentioned bond with Courchesne as surety, and averred that if a recovery was had by the plaintiffs in such suits such recovery would be for labor furnished to Lucier in the performance of his obligations under his contract to furnish rock, and such recovery to that extent would constitute a breach of his contract for which Courchesne would be liable over to the company upon said bond. And in such cross-action the company further set up the facts above detailed with reference to Lucier's abandonment of his contract, Courchesne's performance of Lucier's obligations thereunder until October 26, 1912, and the settlement made upon that date by the company with Courchesne and said payment to him of the sum of $136.92, and Courchesne's agreement in consideration of such payment to protect the company against loss or damage on account of such laborers' claims for wages due by Lucier; and by reason of these facts also it was alleged that Courchesne was liable over to the company.

On December 21, 1912, Courchesne filed suit in the county court against the Sante Fé Fuel Company and Justices James J. Murphy and E. B. McClintock, alleging the execution of above-described contract between Lucier and the Sante Fé Fuel Company and the execution and delivery of above-mentioned bond; the refusal of Lucier on October 7, 1912, to further proceed with the performance of his contract, and of the assumption of Courchesne of the performance of Lucier's obligations thereunder; the giving of the notice of intention to terminate the contract, and of his performance of the contract up to the date of its termination on October 26th. The filing of the above-mentioned suits was likewise alleged, and that in said causes Nos. 1,760, 1,766, and 1,767, pending in the court of Justice Murphy the com-

pany had filed cross-actions over against Courchesne for the recovery of such sum as the plaintiffs in said several suits might recover against the company; that in said cross-actions the company sought to hold Courchesne liable on said $500 bond, and also upon the alleged promise made by Courchesne in connection with his receipt of $136.92 money due the said Lucier. The nature of such cross-actions is stated above, and copy thereof was attached to and made a part of the petition. It was further alleged that the company intended to file similar cross-actions against Courchesne in each of the remaining suits pending in Justice Murphy's court and in each of the six suits filed in the court of Justice McClintock; that in the suits pending before the justices there was no claim made of any lien in favor of plaintiffs thereunder, and the same was simply for the recovery of wages alleged to be due said several plaintiffs by the company; that the original contractor, Lucier, was not made a party to the suits, nor any claim made by plaintiffs that Lucier was indebted to them; that Courchesne was not liable upon his bond to pay any indebtedness incurred by the Sante Fé Fuel Company for labor; and that the receipt by Courchesne of said $136.92 would not impose any liability upon him to reimburse the company for any such sums due by it. It was further alleged that the company would only have the right to file suit against Courchesne for the recovery of the total amount due by reason of his obligation on the $500 bond and by reason of the payment of said $136.92, and had no right to split up its cause of action in 14 separate suits, as it was attempting to do by the filing of such cross-actions, and that the same were vexatious suits, and that if the company was permitted to file such cross-actions in the suits pending in Justice Murphy's court it might result in irreparable injury because the amount in controversy was less than $20 in each suit and the judgment would be final; and that in the six cases pending before Justice McClintock a recovery upon the cross-actions would work irreparable injury because the amount in controversy in each case was less than $100, and Courchesne could not appeal the cases to the Court of Civil Appeals, but judgments in the county court on appeal would be final and conclusive. It was further alleged that the company had voluntarily paid to Courchesne the said sum of $136.92, and it was not paid to him through any mistake, but was paid to him as the representative of Lucier. There is a further general allegation, again asserting that Courchesne was not liable upon his bond or upon any contract made by him in connection with the receipt of said $136.92 whereby the company could rightfully have any claim against him on the cross-actions asserted in the justice court, wherefore Courchesne prayed the issuance of a writ of injunction restraining the company and Jus-

tice Murphy from proceeding to hear and determine the cross-actions filed in causes numbered 1,760, 1,766, and 1,767, and also restraining the company from filing cross-actions in all of the remaining suits pending upon the dockets of said justice courts, and restraining Justices Murphy and McClintock from filing interpleaders and cross-actions in such remaining suits and from hearing or determining the same. A temporary writ of injunction was issued, as prayed for, and served upon the defendants, and thereafter, on January 3, 1913, the company filed its answer and motion to dissolve, and on January 4, 1913, Justices Murphy and McClintock filed their motions to dissolve. On January 27, 1913, the motions to dissolve came on for hearing upon the demurrers and sworn answers of the defendants, and the same was by the court dissolved, from which order of dissolution this appeal is prosecuted. It is unnecessary to state in detail the sworn answers of the defendants, since we are of the opinion the petition for injunction is subject to general demurrer.

[1] It is apparent from the face of the petition that one of the grounds relied upon for the issuance of the writ of injunction is that the causes of action asserted by the company in said cross-actions are without merit. There is no allegation or intimation that the assertion of the cross-action is in any wise tainted with fraud, or that any fraud would be perpetrated in the hearing and determination of issues raised by such cross-action. An injunction is not properly granted to stay the prosecution of a suit merely because the plaintiff has no cause of action. Chadoin v. Magee, 20 Tex. 477. And there is no reason to infer that the justice courts will not respect any defense which Courchesne may have to the cross-actions set up against him. Railway Co. v. Bacon, 3 Tex. Civ. App. 55, 21 S. W. 783. Upon the contrary, it would be wholly unwarranted for the county court to assume that those courts would deny to litigants before them any rights to which they are entitled.

[2] Another ground relied upon for the issuance of the writ is the fact that in some of the suits the judgment rendered in the justice court would be final, and that in others the judgment rendered in the county court would be final and the cases could not be appealed to the Court of Civil Appeals.

These facts certainly present no authority for the county court to interfere with the justice court in the exercise of a jurisdiction conferred upon and confided to it by the Constitution and laws of this state. It has been seen fit to limit the right of appeal in certain cases, and no other court has the right to review judgments rendered or to be rendered in such cases under the guise of an injunction proceeding. Flow v. Railway Co., 149 S. W. 1081; Railway Co. v. Dowe, 70 Tex. 1, 6 S. W. 790; Railway Co. v. Cleburne, etc., Co., 37 Tex. Civ. App. 334, 83 S. W. 1100. Neither does the fact that the jurisdiction of the county court is final in some of the cases present any reason why proceedings should be stayed. It could with equal propriety be urged that the district court should restrain the prosecution of a suit in the county court because the judgment of the Court of Civil Appeals upon appeal would be final.

[3] Neither is the Sante Fé Fuel Company splitting up its cause of action and filing separate suits for the purpose of vexing and harassing Courchesne. The Fuel Company is not voluntarily initiating the proceedings out of which the cross-actions arise, and they are merely seeking in each one of the cases to bring in a party who they claim is liable over to them in the event any judgment is rendered against them, and it would be unreasonable and unjust to require them to wait until all of the suits had been disposed of before they would have the right to proceed against the party who they assert is liable over to them. Upon the contrary, it is right and proper that in each of those suits Courchesne should be vouched in and his liability upon the asserted cross-action then and there determined.

Nothing herein said is to be in any wise construed as expressing any opinion upon the merits of such cross-actions.

Affirmed.