ADAMS v. FIRST NAT. BANK OF WACO et al. (No. 5491.)

(Court of Civil Appeals of Texas. Austin. May 12, 1915.)

1. APPEAL AND ERROR &#9758;917—PRESUMPTIONS —DECISION ON EXCEPTIONS TO PLEADINGS.

On defendant's appeal from a decision on exceptions to his pleadings, it must be assumed that all the allegations thereof are true.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3706–3709; Dec. Dig. &#9758; 917.]

2. PLEADING &#9758;149 — CROSS-PETITION AGAINST CODEFENDANT—SUFFICIENCY.

A cross-petition by defendant in a bank's action on a note signed by him in payment for stock of a corporation given as collateral, alleging that the cross-defendants were officers of the corporation; that they proposed to defendant that he execute his note for unsubscribed stock with the stock as collateral, and that they would arrange with the payee to advance the money with which to pay for the stock and to carry it

for their use until they could sell it; that they would sell it and apply the proceeds of sale to payment of the note and so protect defendant from any liability thereon; that they sold a part of the stock and applied it on the note; that defendant signed a renewal note on the same; that such agreements were made with the knowledge and consent of the payee, who agreed that the cross-defendants should pay the note, and that defendant would not be called on to pay it—stated a cause of action against the cross-defendants for breach of contract, which might be asserted against them in a separate suit.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 301; Dec. Dig. &#9758;149.]

3. ACTION &#9758;25—COMPLETE RELIEF—PREVENTION OF MULTIPLICITY OF SUITS.

One of the reasons for giving the courts both legal and equitable jurisdiction was that the equitable doctrine of avoiding a multiplicity of suits might be enforced, as it is the general policy of law to settle all matters between the same parties, and between all parties as to the same subject-matter, in the same suit.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 124–145, 147–149, 153, 156–159, 313; Dec. Dig. &#9758;25.]

4. PARTIES &#9758;50—JOINDER—EXCEPTION.

Under Rev. St. 1911, art. 1848, permitting additional parties to be brought in, it is the general exception to the rule as to the joinder of parties that the court in its discretion may refuse to allow additional parties defendant, who, though proper, are not necessary parties, where such action would prejudice plaintiff's right by unduly delaying the trial of the cause.

[Ed. Note.—For other cases, see Parties, Cent. Dig. § 76; Dec. Dig. &#9758;50.]

5. ACTION &#9758;47—JOINDER OF CAUSES OF ACTION—ACTIONS EX CONTRACTU AND EX DELICTO.

Matters ex contractu and ex delicto should not be joined in the same suit, though they may be joined when they grow out of the same transaction, relate to the same subject-matter, and are dependent upon the same evidence.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 469, 470, 472–489; Dec. Dig. &#9758;47.]

6. CONTRIBUTION &#9758;5—JOINT TORT-FEASORS.

No contribution is allowed between tort-feasors, though such rule will not be applied where the wrongdoers are not in pari delicto.

[Ed. Note.—For other cases, see Contribution, Cent. Dig. §§ 6–9; Dec. Dig. &#9758;5.]

7. PARTIES &#9758;92—JOINDER—WAIVER.

A bank, suing the maker of a note, but failing to object within a year to the joinder of cross-defendants who had appeared and answered and were ready for trial, and agreeing to several contingent continuances, thereby waived its right to object, on the ground of delay, to such cross-defendants being made parties to suit; and, where the cross-defendants were proper, if not necessary, parties, the sustaining of an exception to their joinder was an abuse of the trial court's discretion, especially as defendant might thereby incur the danger of having the statute of limitations successfully urged in his cause of action against the cross-defendants.

[Ed. Note.—For other cases, see Parties, Cent. Dig. §§ 150–152; Dec. Dig. &#9758;92.]

8. PLEADING &#9758;149 — CROSS-PETITION AGAINST CODEFENDANTS—ALLEGATION AND PROOF.

In an action on a note wherein defendant made his alleged sureties cross-defendants, he need not allege that the agreement of suretyship was in writing, as, if required to be in writing,

written evidence would be admissible to prove the alleged contract.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 301; Dec. Dig. ☞149.]

9. BILLS AND NOTES ☞460—ACTION—JOINDER—CROSS-DEFENDANTS.

In an action against the maker of a note, given in payment for a subscription to capital stock of a corporation, wherein defendant alleged that the note had been executed by him at the request of the cross-defendants for their accommodation and benefit as stockholders and directors of the corporation, in that they were thereby enabled to issue additional shares of the corporation and deliver it to the plaintiff subject to sale by them, that defendant was only nominally, and that cross-defendants were primarily, liable on the note and had assumed its payment, the plaintiff had a cause of action against the cross-defendants to which the defendant was entitled to be subrogated, and the cross-defendants, primarily liable, were proper parties to the suit.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1434–1443; Dec. Dig. ☞460.]

10. BILLS AND NOTES ☞119—PARTIES LIABLE—NAME ON NOTE.

No one is chargeable on a note unless his name appears as a party to it in some relation.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 255–259; Dec. Dig. ☞119.]

11. EVIDENCE ☞385 — PAROL EVIDENCE — WRITING.

In the absence of fraud, accident, or mistake, oral evidence is not admissible to contradict or vary the terms of a written instrument.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1757, 1758; Dec. Dig. ☞385.]

12. PRINCIPAL AND AGENT ☞145 — UNDISCLOSED PRINCIPAL—LIABILITY FOR DEBT.

While an undisclosed principal cannot be held as a party to a bill or note, he may nevertheless be held liable for the debt, so that, while an agreement in reference to the payment of a note may not be a good plea in bar to recovery thereon, it may furnish sufficient grounds for a suit for breach of contract.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 499, 513–520; Dec. Dig. ☞145.]

13. PARTIES ☞51—NEW PARTIES—PERSONS PRIMARILY LIABLE.

One who, as between himself and a defendant in any suit, is the principal obligor may be impleaded by such defendant, who may have judgment over against such primary obligor; and in such case it is immaterial that the obligation arose upon a collateral contract or by force of law.

[Ed. Note.—For other cases, see Parties, Cent. Dig. §§ 77–82; Dec. Dig. ☞51.]

Appeal from District Court, McLennan County; J. Walter Cocke, Special Judge.

Action by the First National Bank of Waco against H. H. Adams, with cross-action by Adams against W. R. Clifton and others. Judgment for plaintiff on exceptions to defendant's pleadings, and defendant appeals. Reversed and remanded.

J. D. Williamson, of Waco, and Alex. F. Weisberg and Thompson, Knight, Baker & Harris, all of Dallas, for appellant. Sleeper, Boynton & Kendall, Cross, Gross & Street, and Stribling & Stribling, all of Waco, for appellees.

## Statement of the Pleadings.

JENKINS, J. 1. On March 25, 1913, the First National Bank of Waco, which will be hereinafter referred to as the Bank, filed its petition in usual form, seeking to recover of appellant on his negotiable promissory note the sum of $18,616.77 and attorney's fees, and also to foreclose a lien on 110 shares of stock in the Behrens Drug Company, which it alleged the appellant had indorsed and delivered to it to secure the payment of said note.

2. On June 5, 1913, the appellant filed his answer and by way of cross-action made parties defendant herein W. R. Clifton, H. C. Risher, E. Rotan, S. Archinold, and the Behrens Drug Company, who will be hereinafter referred to as the cross-defendants. On June 30, 1913, all of the cross-defendants, except Archinold, who was absent from the state, filed their answer herein. Archinold answered in September, 1913.

3. The Bank and all of the cross-defendants were represented by the same attorneys.

4. The Bank filed no additional pleading until July 1, 1914, at which time it filed what is denominated "Plffs Special Exception to Defendant Adams's Cross-bill," in which it says:

"* * * If the allegations in said cross-bill be true, yet it is not such a cause of action as can be properly litigated in this proceeding, and it appearing upon the face of plaintiff's petition [meaning defendant's cross-action] that it is not a cause of action arising out of the loan of the money made by plaintiff to defendant, as is admitted in defendant's said answer and cross-bill. Wherefore this plaintiff prays that so much of said answer as undertakes to set up a cross-bill against said defendants be stricken out."

This exception does not appear to have been passed upon by the court. On July 6th, the Bank filed its second supplemental petition, treating the exception above referred to as its first supplemental petition, and excepted to appellant's second amended original answer on account of misjoinder of parties and causes of action, and also excepted to said amended answer as showing no defense to the Bank's cause of action on the note sued on. Both of these exceptions were urged to appellees' third amended original answer and both were sustained.

5. The original answer of the cross-defendants (June 30, 1913) consisted of a general demurrer and a general denial. The first amended original answer of the cross-defendants does not appear in the record. The cross-defendants filed their second amended original answer on July 6, 1914, wherein they excepted to appellees' first amended original answer on account of misjoinder of causes of action and of parties, and in addition thereto demurred generally to said petition, and denied generally and specifically the material allegations therein. No action was taken on this answer.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

6. The case went to trial on appellant's second amended original answer and cross-bill filed herein July 6, 1914, and his trial amendment, filed July 7, 1914, which contained substantially the same allegations as to his defense to plaintiff's suit and his cause of action against the cross-defendants as were set out in his original answer and cross-bill, and in addition thereto alleged that the Bank had waived its right to plead misjoinder herein by reason of its delay in filing the same, and by reason of its having agreed to several continuances, after appellant had filed said cross-bill and before it excepted thereto.

7. Appellant's cause of action against the cross-defendants, as alleged in said answers, is substantially as follows:

(a) That about December 10, 1910, the Behrens Drug Company was a private corporation under the laws of this state, doing business in Waco, Tex.; that W. R. Clifton was its president, Edward Rotan was its vice president, H. C. Risher was its secretary, and that all of said parties, together with S. Archinold, were its directors; that said parties were desirous of increasing the capital stock of said corporation to the extent of 500 shares of the par value of $100 each, which they desired to sell to parties other than the then stockholders; that at the solicitation of said parties appellant subscribed and paid for 200 of said shares, and one M. H. Hickox subscribed and paid for 100 of said shares, leaving 200 of said shares unsubscribed for, which 200 shares the appellant did not desire to subscribe or pay for.

(b) That thereupon the said parties, the cross-defendants herein, proposed to appellant that if he would nominally subscribe for said remaining 200 shares for their benefit, and execute his note therefor to the Bank with said stock as collateral, they would arrange with said Bank to advance the money with which to pay for said stock, and to carry the same for their use and benefit until they could sell the same, and that they could and would sell the same at its then value, which it was agreed was $159 per share, plus a sufficient amount to pay the interest on said note, and would apply the proceeds of said sale to the payment of said note; that although appellant would appear to be nominally liable to the Bank on said note, he was not to pay the same, but that they would be primarily liable for the payment thereof, and that they would protect the appellant from the payment of the same or any liability thereon. That the cross-defendants gave as a reason why they wished the appellant to sign said note, instead of signing the same themselves, that three of them were directors in said Bank and also directors in said Behrens Drug Company, and for this reason they did not wish their name to appear on said note.

(c) That appellant, having confidence in the good intentions of the cross-defendants, and relying upon their said promises to sell said stock and to pay said note, and to hold themselves primarily liable for the payment thereof, and to hold him harmless in said transaction, did nominally and for their benefit subscribe for said stock and execute to the Bank a note for $31,800, the value of said 200 shares of stock at $159 per share.

(d) That pursuant to their agreement to sell said stock, and with the proceeds thereof to pay said note, the cross-defendants did sell 90 shares of same on a basis of $159.06 per share, and did pay into said Bank, which applied the same as a credit on said note, the proceeds of such sale, and there was paid to said Bank, as dividends on said stock the sum of $1,100, which was also applied as a credit on said note.

(2) That in the meantime said note fell due, and the cross-defendants arranged with the Bank for a renewal of the unpaid balance thereof, which amounted to $18,616.77, and at the instance and request of the said defendants, and for their benefit, appellant signed said renewal note for said amount, the same being the note herein sued on, under a like agreement with said defendants as with reference to the original note, and for no other purpose or consideration.

(f) That the appellant has demanded of the cross-defendants that they carry out said agreement, but that with the exception of the sale of said 90 shares, they have wholly failed and refused, and still fail and refuse, so to do.

(g) That appellant is only the nominal owner of said drug company stock, but, in so far as he may legally do so, he tenders the same to the cross-defendants herein.

(8) In reply to the Bank's suit, the appellant alleges: (1) That all of said agreements and understandings with the cross-defendants were made with the knowledge and consent of the Bank; (2) that they were made at the same time that said note was executed, and that the execution of said note and said agreement to indemnify and hold harmless the appellant and to pay off said note were all parts of one and the same transaction; (3) that the Bank was privy to all of said agreements and was a party thereto and agreed to the arrangement that the appellant was not to pay said note, but that the same was to be paid by the cross-defendants, three of said defendants being at the time directors of said Bank, the defendant Rotan being its active president and business manager; (4) that said cross-defendants were acting in said transaction not only for themselves but also for the Bank and the Behrens Drug Company, with the knowledge and consent of the Bank and said Drug Company, and that the Bank did for itself also agree with and promise appellant that his signature to said note was merely nominal, and that appellant would never be called on to

pay the same, but that the cross-defendants would pay the same in the manner stated; (5) that it was agreed and understood by all parties, including the Bank, that said note was not delivered with the intention that the same should become a note or binding obligation of appellant to pay the same, but that the same was executed merely as a matter of form; (6) that if appellant is liable on said note in any event, this suit is prematurely brought, in that it was understood and agreed by and between all of the parties to the transaction, including the Bank, at the time of the execution of said note, and as a part of the consideration therefor, that the proceeds of the sale of said drug company stock was the primary fund out of which said note was to be paid, and that no demand for the payment of said note should be made until all of said stock was sold and the proceeds thereof applied to said note, and that there remains unsold in the hands of the Bank 110 shares of said stock.

## Opinion.

[1, 2] This case having been decided on exceptions to appellant's pleading, it must be assumed, for the purposes of this decision, that all of the allegations therein are true. Such allegations being true, we think it cannot be doubted that appellant has a cause of action against the cross-defendants for breach of contract which might be asserted against them in a separate suit. Had the Bank, prior to the institution of such separate suit, recovered judgment against the appellant on the note herein sued on, the cross-defendants being primarily liable for the debt, as between them and the appellant, it would not have been necessary, in a suit against them, to allege that he had paid such judgment. Pope v. Hays, 19 Tex. 378; Skipwith v. Hurt, 94 Tex. 333, 60 S. W. 423; Haberzettle v. Dearing (Civ. App.) 80 S. W. 539; Courchesne v. Fuel Co. (Civ. App.) 155 S. W. 684.

For the reasons which support the foregoing proposition, if the appellant's cause of action against the cross-defendants who are primarily liable to him is one which can properly be joined with plaintiff's cause of action against him, he may make the cross-defendants defendants in this suit, and have judgment against them.

[3] One of the reasons for giving our courts both legal and equitable jurisdiction was that the equitable doctrine as to the avoidance of a multiplicity of suits might be enforced. It is the general policy of our law to settle all matters between the same parties, and between all parties as to the same subject-matter, in the same suit. Skipwith v. Hurt, supra; Clegg v. Varnell, 18 Tex. 294; King v. Parks, 26 Tex. Civ. App. 95, 63 S. W. 902; Craddock v. Goodwin, 54 Tex. 582; Hume v. Perry (Civ. App.) 136 S. W. 598; Story on Eq. Plead. § 76a. Our statutes with reference to joining

sureties in suits against the principal obligor are additional evidence with reference to the policy of our laws on this subject. R. S. arts. 1842, 1843, 6336, and 6337.

[4-6] The general exceptions to the rule as to joinder of parties and causes of action are that the court in its discretion may refuse to allow additional parties to be made defendants who, though proper, are not necessary parties, and where such action would prejudice the plaintiff's right by unduly delaying the trial of the cause. R. S. art. 1848; Phelps v. Scott, 49 S. W. 687; that matters ex contractu and ex delicto should not be joined in the same suit, and that no contribution will be allowed between joint tort-feasors.

It has been held that the last-named doctrine will not be applied in this state where the wrongdoers are not in pari delicto. San Antonio v. Smith, 94 Tex. 266, 59 S. W. 1109; City of San Antonio v. Talerico, 98 Tex. 155, 81 S. W. 518; Ft. Worth v. Allen, 10 Tex. Civ. App. 488, 31 S. W. 235.

It has also been held that matters ex contractu and ex delicto may be joined where they grow out of the same transaction, relate to the same subject-matter, and are dependent in their principal features upon the same evidence. Bank v. Bank, 77 S. W. 241; Harris v. Cain, 41 Tex. Civ. App. 139, 91 S. W. 869; Kemendo v. Fruit Co., 131 S. W. 76. These cases show the general trend of our decisions as to the liberality that will be allowed in the joinder of parties and causes of action.

[7] By failing to object to the joinder of the cross-defendants for more than a year after they had been made parties and had appeared and answered, and by agreeing to several continuances in the meantime, we think that the Bank waived its right to object on the score of delay to said defendants being made parties to this suit. There is no suggestion in the record that said cross-defendants were not ready for trial. Under such circumstances, if it be conceded that the cross-defendants were proper, though not necessary, parties to the Bank's cause of action, sustaining the exception to such joinder must be held to have been an abuse of the court's discretion, especially as appellant may thereby incur the danger of having the statute of limitation successfully urged to his cause of action against the cross-defendants. Hume v. Perry, supra; Garner v. Jamison, 162 S. W. 943; San Antonio v. Wildenstein, 49 Tex. Civ. App. 514, 109 S. W. 233.

[8] Appellant does not allege that the agreements upon which he relies were in writing, but such allegation was not necessary. If the same is required to be in writing, written evidence would be admissible to prove the alleged contract without having alleged that the same was in writing. Harvester Co. v. Campbell, 43 Tex. Civ. App. 421, 96 S. W. 93; Carson v. McCord, 37 Tex. Civ. App. 540, 84 S. W. 392; Land Co. v. Dooley, 77 S. W. 1031. For the purpose of this opin-

ion it must be taken that the alleged agreements between appellant and the cross-defendants were in writing.

[9] The Bank having waived its right to have the cross-defendants made parties on the ground that such action might delay its suit, the question still remains, Were the cross-defendants proper parties? It is contended by appellees that they were not, because, among other reasons, the Bank had no cause of action against the cross-defendants. In support of this contention we are cited to Fidelity Co. v. Fossati, 97 Tex. 504, 80 S. W. 74; Young v. Bank, 54 Tex. Civ. App. 206, 117 S. W. 476, and Keel & Son v. Grain Co. (Civ. App.) 143 S. W. 235. In Fidelity Co. v. Fossati, supra, occurs the following language:

"In each of those cases [Skipwith v. Hurt, 94 Tex. 322, 60 S. W. 423, and Underwriters v. Railway Co., 31 Tex. Civ. App. 104, 71 S. W. 419] the plaintiff had a cause of action against the party impleaded by the defendant, to which cause of action the defendant was entitled to be subrogated, and the party impleaded was, in justice, primarily liable."

We think that appellees' allegations place the instant case in the class of cases above cited. These allegations are, in substance, that the note sued on was executed by appellant at the request of the cross-defendants for their accommodation and for their benefit, in that thereby they were enabled to have the 200 additional shares of the Drug Company stock issued and delivered to the bank subject to sale by them, and which they desired to sell for purposes of their own, they being stockholders in and directors of said Drug Company, and being desirous of increasing the capital stock of said Drug Company to that amount over and above what had otherwise been subscribed, which they could not do unless the same was actually or nominally subscribed and actually paid for; that while the appellant was to become nominally responsible to the Bank for the money used in paying the Drug Company for said stock, and was to become nominally the owner of said stock, in fact the cross-defendants agreed to pay said note, and that appellant in fact held said stock in trust for whomsoever might purchase the same from them. In other words that for a valuable consideration they assumed the payment of said note. If so—

"the plaintiff had a cause of action against the [cross] defendants, to which cause of action the defendant [appellant] was entitled to be subrogated, and the parties impleaded [the cross-defendants] was [were] in justice primarily liable." Key v. Fouts, 44 Tex. Civ. App. 424, 99 S. W. 448; Spann v. Cochran, 63 Tex. 242, and authorities there cited; Ward v. Green (Civ. App.) 28 S. W. 576; Gay v. Pemberton, 44 S. W. 401; Book Concern v. Carswell (Civ. App.) 46 S. W. 859.

In Fidelity Co. v. Fossati, supra, the facts which would have entitled the state to recover were different from those which would entitle the bondsmen to recover, and provable under different rules of evidence. This would have produced such a complication as perhaps justified the court in dismissing the Fidelity Company from the suit, even had it been liable to the state; the state not attempting to enforce such liability. In Young v. Bank, supra, the statement in the opinion that "the allegations did not show that the insurance company was a proper or a necessary party to the suit" is dicta. That question was not presented by any assignment of error in the case. In Keel v. Grain Co., supra, Williams sold the Grain Company a car of corn of a certain quality ·to be delivered at a certain place. Keel sold Williams a car of corn of a certain quality to be delivered at a certain place. It was not alleged that Keel assumed Williams' contract, or that he agreed to furnish corn to fill the same. Legally speaking, the facts that each car of corn was to be of the same quality and to be delivered at the same place were mere coincidences, and that these coincidences were brought about by the fact that it was Williams' purpose to use the corn contracted for by him from Keel in filling his contract with the Grain Company (which fact was not known to Keel) did not make Keel privy to Williams' contract with such company, or liable for the fulfillment thereof.

[10-12] The Bank, in support of its contention that it could not have sued the cross-defendants, invokes the doctrine in reference to negotiable instruments that "no one can be charged thereon unless his name appears as a party to the paper in some relation." T. L. & C. Co. v. Carroll, 63 Tex. 51; Sanger v. Warren, 91 Tex. 482, 44 S. W. 477, 66 Am. St. Rep. 913; Heffron v. Pollard, 73 Tex. 96, 11 S. W. 165, 15 Am. St. Rep. 764; Lanius v. Shuber, 77 Tex. 25, 13 S. W. 614; Sparks v. Dispatch Co., 104 Mo. 531, 15 S. W. 417, 12 L. R. A. 714, 24 Am. St. Rep. 351; Brown v. Parker, 7 Allen (Mass.) 337; Slawson v. Loring, 5 Allen (Mass.) 340, 81 Am. Dec. 750; and Shuey v. Adair, 18 Wash. 188, 51 Pac. 388, 39 L. R. A. 473, 63 Am. St. Rep. 879. In each of these cases, except Lanius v. Shuber, it was alleged that the party whose name did not appear on the note sued on was in fact the principal thereon, the evidence of which fact rested in oral testimony. It is elementary that, in the absence of fraud, accident, or mistake, oral evidence is not admissible to contradict or vary the terms of a written instrument. In Sanger v. Warren et al., supra, it was sought to hold Sanger as principal on a note signed by Rees, upon the ground that Rees was Sanger's agent in the transaction. The same point was involved in Sparks v. Dispatch Co., Brown v. Parker, and in Slawson v. Loring, supra. In Heffron v. Pollard, the instrument sued on was not negotiable. It was sought to hold Heffron as principal on an instrument to which he signed the name of John W. Fry by himself as agent. In Shuey v. Adair, it was held that the maker of a negotiable promissory note could not defeat payment thereof on the ground that he

acted in the transaction as agent for another, under an oral agreement with the payee that he should not be personally bound. There are other cases along this line which hold that one who indorses a negotiable note without qualification will not be allowed to prove by oral testimony that it was agreed that such indorsement should be taken as without recourse. We do not question the correctness of these decisions; but there is another legal principle which should not be lost sight of, and that is, while an undisclosed principal cannot be held as a party to a bill or note, he may nevertheless be held liable for the debt. Daniels on Neg. Instr. § 308a. So, while an agreement in reference to the payment of a note may not be a good plea in bar to recovery on the note, it may furnish sufficient grounds for a suit for breach of contract. Atwood v. Lewis, 6 Mo. 392; Brown v. Shelby, 4 Ind. App. 477, 31 N. E. 89; Mills v. Todd, 83 Ind. 25; Bridge v. Tierman, 36 Mo. 439; Durand v. Stevenson, 5 U. C. Q. B. 336.

In Lanius v. Shuber, supra, the defendant sought to defeat plaintiff's cause of action by proving that plaintiff had breached his contract with reference to conditions subsequent growing out of a collateral agreement with reference to the transaction. The defendant did not seek to recover damages for breach of such contract, as we think he might have done, if any he suffered by such breach. Neither did Rees in the Sanger Case seek to make Sanger a party defendant as being liable over to him.

Conceding, as we do, the proposition that recovery cannot be had upon a note, in the technical sense, against any one "unless his name does appear as a party to the paper in some relation" still, as we have seen from Key v. Fouts and other cases hereinabove cited, the payee of a promissory note may recover against one who has assumed or guaranteed, by a collateral agreement, the payment of such a note, and may join such party and cause of action in a suit on the note against the maker.

There is another point worthy of consideration, and that is, if the Bank, at the time of the execution of said note and as a part of the same transaction, agreed in writing that it would look to the proceeds of the sale of the Drug Company stock for payment of said note, and that appellant should not otherwise be liable thereon, is it entitled to a personal judgment against the appellant? In Gas Co. v. Wood, 90 Me. 516, 38 Atl. 548, 43 L. R. A. 449, it was held that an agreement in writing that the payor of a note might, at his option, receive the same back by surrendering certain stock for which the note was given would be enforced. We do not deem it necessary to decide this point. It may be disclosed on another trial that the alleged agreement was not in writing.

[13] We think it is well settled in this state that one who, as between himself and a defendant in any suit, is the principal obligor may be impleaded by such defendant, and that such defendant may have judgment over against such primary obligor. Kings v. Parks, 26 Tex. Civ. App. 95, 63 S. W. 900; Haberzettle v. Dearing (Civ. App.) 80 S. W. 539; Key v. Fouts, 44 Tex. Civ. App. 424, 99 S. W. 448; Hume v. Perry (Civ. App.) 136 S. W. 595; Courchesne v. Fuel Co. (Civ. App.) 155 S. W. 684; Love v. Keowne, 58 Tex. 200; Underwriters v. Railway Co., 31 Tex. Civ. App. 104, 71 S. W. 419; Ins. Co. v. Houston (Civ. App.) 110 S. W. 973. In such case it is immaterial that the obligation of indemnity arises upon a collateral contract or by force of law. As we have seen in Ft. Worth v. Allen, supra, it is the policy of our law to permit such joinder, even in cases of tort, where one party is, as between the defendants, primarily liable. We are in full accord with the statement of the court in that case, wherein it is said:

"It has always seemed to us just and right that the one who is ultimately liable should be made a party to the suit in which the amount of his liability is to be fixed."

We are cited to Frey v. Railway Co., 86 Tex. 465, 25 S. W. 609, as announcing a contrary doctrine. That was a suit of trespass to try title to recover a certain 15 acres of land in the town of Stephenville, which was being used by the railway company for depot purposes. Frey and others were sought to be made parties on the ground that they had executed a bond to furnish the railway company 15 acres of land in said town for such purpose. But it was not alleged that they had agreed to furnish the land in controversy for such purpose. Hence a recovery in that suit would not have shown a breach of contract on the part of the bondsmen.

For the reasons stated herein we hold that the trial court erred in sustaining the Bank's plea of misjoinder, and this cause is reversed and remanded for a new trial.

Reversed and remanded.