**GILBERT v. MOORING et al.**
No. 1486.

Court of Civil Appeals of Texas. Eastland.
Sept. 27, 1935.

Rehearing Denied Dec. 6, 1935.

Lee R. Stroud and E. P. Bryan, both of Dallas, for appellant.

Thompson, Knight, Baker & Harris, of Dallas, for appellees.

LESLIE, Chief Justice.

This opinion is written in response to the motions for rehearing by the appellees, Westchester Fire Insurance Company and Northwestern Fire & Marine Insurance Company. The original opinion in this cause, handed down September 27, 1935, is withdrawn and this one substituted therefor.

This is a suit by N. L. Gilbert, guardian for and in behalf of his ward, Thomas Earl Gilbert, a lunatic, against (1) Moses Mooring, (2) Josie May Mooring (formerly Josie Garrett), (3) Oscar Mooring (husband of Josie Mooring), (4) Robert Garrett, (5) David Garrett, (6) George Garrett, (7) Willie Garrett, and (8) S. D. Garrett (the last three minors, represented by guardian ad litem), (9) J. C. Thompson, (10) Westchester Fire Insurance Company, and (11) Northwestern Fire & Marine Insurance Company.

It is unnecessary to state in detail the nature of this suit, and only such phases of it will be referred to as are necessary to reflect the rulings of the trial court and the conclusions entertained by this court on the appeal. Primarily, it is a suit by the plaintiff to establish a debt evidenced by a vendor's lien note, and to foreclose the lien on a tract of land in the city of Dallas. Georgia Mooring, the original owner of the land, the primary maker of the note to redeem or repurchase the same, was dead when this suit was filed. Her husband and her heirs were made parties defendant. J. C. Thompson is made party defendant upon allegations of fraud to establish a trust, etc. The insurance companies are alleged to have written policies of fire insurance on the buildings on the lot and thereafter destroyed by fire.

The plaintiff's pleadings are very long and we shall undertake to state merely the substance of the lawsuit.

The fraud alleged against J. C. Thompson, and which is relied upon as a predicate for bringing him into the suit, is that he

learned that the plaintiff, N. L. Gilbert, had certain funds belonging to his son, a lunatic, and that said Gilbert, guardian, desired to lend the same on real estate security; that said Thompson, an attorney and agent of Georgia Mooring, knew that she had lost a certain lot or tract of land to S. Topletz, who had taken it upon a debt and mortgage owed by her to him; that said Thompson effected an agreement between the Moorings, Gilbert, and Topletz whereby Topletz was to reconvey the whole lot to Mooring for the amount he had against it; that Thompson induced plaintiff, Gilbert, to make a loan of the amount of money necessary to have the lot reconveyed, taking a lien on the entire lot; that through Thompson's suggestion to Gilbert, a man alleged to be ignorant in matters of law and business, the said Gilbert made Thompson his agent to apply for the loan, obtain the approval and confirmation of the probate court, and to draw up all instruments necessary for the consummation of the deal; that the agreement between the parties was that Topletz was to deed the whole lot back to Mooring, who would execute a vendor's lien note and lien therefor to Topletz, who would thereupon transfer same to Gilbert, who in turn would deliver to Topletz $425, the amount of the note. It is alleged that the agreement further contemplated that Thompson would have the Moorings take out insurance covering two houses standing on the lot, and that the policies would be made payable to the plaintiff, Gilbert, guardian, as his interest might appear.

It is further alleged that instead of carrying out the deal as agreed upon, and as above indicated, Thompson, an attorney, and acting as an agent in a double capacity for the parties at the same time, fraudulently induced Topletz to reconvey to Mooring the south half only of the lot; that he procured the said Mooring to execute the $425 vendor's lien note and lien against the south half only of the lot; that the lien and note on the south half only was thereafter transferred to Gilbert in consideration of the money lent by him; that said Thompson did procure, or have the Moorings to procure, from the Westchester Fire Insurance Company a fire insurance policy in the sum of $300 covering the house on the south half of the lot. This policy had the loss payable clause in favor of Gilbert as per the agreement. It is further alleged that said Thompson caused the said Topletz, or Moorings, to convey the north half of the lot to himself individually, and that he procured the Northwestern Fire & Marine Insurance Company to issue a policy payable to him for $200 covering the house on said north half of the lot.

It is further alleged that the deception and fraud was not discovered until after the death of Mrs. Mooring, and until after the house on each half of the lot was destroyed by fire. In substance, the suit is to establish the debt and lien on the land against all the heirs, no necessity for administration existing, and to foreclose the liens. The plaintiff seeks a foreclosure on the south half of the lot, and an application of the proceeds thereof, and the Westchester Fire Insurance Company policy, if needed, to the debt. In addition, the plaintiff seeks to impress a lien on the north half of the lot standing in the name of J. C. Thompson, as well as the policy of insurance written by the Northwestern Fire & Marine Insurance Company, and to have the proceeds of each applied to the debt.

The history of the litigation is in substance as follows: The plaintiff, Gilbert, filed his original petition herein June 22, 1932. The defendants filed answers immediately and said insurance companies each filed an original answer August 2, 1932, consisting simply of a general demurrer and general denial. Thereafter the trial court sustained these general demurrers of the insurance companies and the plaintiff took leave to amend and on July 24, 1934, he filed his first amended original petition with which we are now concerned. To this amended petition the defendants answered and said insurance companies each presented a separate amended original answer, containing a general demurrer, special exceptions raising misjoinder, etc. On July 30, 1934, the cause was called for trial, and the trial court considering the pleas in the order presented by the amended answers of the insurance companies, first acted upon and overruled the general demurrer urged by each, and then sustained the pleas in abatement, dismissing the insurance companies from the suit.

The appellant's first attack on the ruling of the trial court relates to the order sustaining the plea in abatement based on misjoinder. The assignment is as follows: "It appearing that the Westchester Insurance Company and the Northwestern Fire & Marine Insurance Com-

pany had delayed to file their plea in abatement for misjoinder of causes and misjoinder of parties from the filing of the suit on June 22, 1932 until June 29, 1934, a period of two years and 7 days, during which time the same had been passed many terms of court. Their pleas in abatement came too late and these facts being shown by the record in the case and shown also by the court's statement of facts it was error for the court to sustain said dilatory pleas and dismiss as to said parties herein." It will be noticed that the vice complained of is that the pleas in abatement came too late, or were waived by undue delay in presenting same. Looking to the plaintiff's first supplemental petition, it will be seen that the same point was raised both by exception and allegations of that fact. Nowhere does the appellant make the point that the pleas in abatement were filed out of due order. In other words, the appellant has consistently contended that the pleas in abatement were waived on the sole ground of delay, and no other facts, or circumstances in connection with such delays which would show, or tend to show, that waiver of the pleas would be the necessary effect of delay. The pleas were presented to the court within six days after they were filed and there appears to have been no lack of diligence in calling same to the attention of the court at the term during which they were filed.

We do not believe that a mere delay or inaction in presenting and urging a plea in abatement ipso facto worked a waiver of the plea at the time it was presented. It is conceivable that cause for presenting the same had not theretofore existed, and, as stated, the record discloses no circumstances taken in connection with the delay that should be given the effect of forfeiting the appellees' right to file and urge the same when they did. Breed v. Higginbotham Bros. & Co. (Tex.Civ.App.) 141 S.W. 164, par. 2. In 1 Tex.Jur. p. 176, § 126, it is said: "A delay in filing the pleadings of the defendant, with which a plea in abatement is found in due order, would not, in the absence of a showing of prejudice, seem to preclude a party from calling the attention of the court to the plea during the same term at which the pleadings are filed."

A plea in abatement is not overruled by operation of law upon the expiration of the term at which it was filed. American Soda Fountain Co. v. Hairston (Tex.Civ.

App.) 69 S.W.(2d) 546. It is there held that such a plea, until acted upon, remains undisposed of regardless of the termination of the term at which it was filed. See Woods v. Haefer (Tex.Civ.App.) 63 S.W. (2d) 891; L. Grief & Bro. v. Texas Cent. R. Co. (Tex.Civ.App.) 163 S.W. 345; Bear v. Houston & T. C. R. Co. (Tex.Civ. App.) 265 S.W. 246.

It is clear from the record that the appellant failed to preserve any point presenting a contention that the defendants, or appellees, presented their pleas in abatement "out of due order of pleading." While we did not so construe it in our original opinion, a further examination of the record forces us to the conclusion that the appellant urged no objections to the order in which the pleas in abatement were presented. It is the privilege of the plaintiff, appellant here, to waive all exceptions to defects in a plea in abatement, including an objection that the plea was not filed in due order. Garner & Co. v. Riley (Tex. Civ.App.) 238 S.W. 953; 1 Tex.Jur. p. 158, § 114. Also, an objection to misjoinder of parties defendant cannot be raised by a general demurrer to merits of cause. McFadden v. Schill, 84 Tex. 77, 19 S.W. 368; Canfield v. Newman (Tex.Civ.App.) 265 S.W. 1052(5); Hoke v. Simonton (Tex. Civ.App.) 46 S.W.(2d) 1013.

■ Further the court's sustaining or overruling of special exceptions to the petition challenging the plaintiff's joinder or nonjoinder of causes of action does not raise a question of fundamental error. Bear v. Houston & T. C. R. Co. (Tex.Civ. App.) 265 S.W. 246.

For the foregoing reasons, the appellant's first assignment is overruled.

We now come to the consideration of the propositions based upon the action of the trial court in sustaining the general demurrer to the plaintiff's petition, and in going further and sustaining the exceptions presenting pleas of misjoinder and dismissing the plaintiff's suit as against the two insurance companies, appellees herein. The record is in a confused state, and it does not clearly reflect the exact order in which the trial court ruled upon these questions. This makes the questions presented for consideration very difficult to answer.

The court's order as perpetuated in its minutes reads as follows: "It is therefore ordered, adjudged and decreed by the court that the general demurrer of West-

chester Fire Insurance Company and the general demurrer of the Northwestern Fire & Marine Insurance Company, and the special demurrers of each of the insurance companies with respect to the misjoinder of parties and causes of action be and the same are hereby sustained."

In his findings, the court states: "On July 30, 1934, the general demurrer and the exceptions of each of the insurance companies came on to be heard by the court, and the court sustained the general demurrers, and was of the opinion that the special exceptions of the insurance companies raising the question of misjoinder of parties and causes of action should likewise be sustained. * * * After the pleas of misjoinder were sustained by the court, the court offered to permit the plaintiff to elect the party against whom he would pursue his remedy in this court, and the plaintiff refused to amend his pleadings, and refused to make any election. It was then that the court dismissed the cause of action so far as it pertained to the insurance companies, and each of them."

On dismissing the insurance companies, the court entered its order to the effect that such dismissal was without prejudice to the plaintiff's right to institute suit against either of said companies in a court of proper jurisdiction. Since the dismissal was without prejudice to the institution of another suit, that action would appear to be based upon the ruling relating to the pleas in abatement, rather than the ruling on the general demurrer. Further, the fact that the trial court offered to proceed with the trial as against either of the defendants provided the plaintiff would then elect to prosecute his suit against one of them, implies that he deemed the plaintiff's facts and allegations sufficient to reflect a cause of action against either insurance company if sued alone in that court.

■ If it were proper that the general demurrer should be sustained, it was an erroneous procedure for the court to go further and sustain the special exceptions as to misjoinder. A judgment based upon the dismissal of the suit on the plaintiff's failure to amend after the general demurrer was sustained would be res adjudicata if permitted to become final; whereas, a judgment of dismissal based upon failure to amend where misjoinder is sustained would not have the same effect. Evidently there is serious inconsistency in the two rulings of a prejudicial nature to the losing party.

Taking the points raised in the order in which they are presented by the pleadings, and in which they seem to have arisen under the rulings of the court, we consider first the assignment complaining of the overruling of the general demurrer.

■ Though poorly stated, it is believed that the plaintiff's petition presented a cause of action on the note and to foreclose the lien, and that the facts alleged reflect a cause of action in which it is proper to join the two insurance companies in order to achieve a proper determination in one suit of the issues arising under the pleadings. If, as alleged, an insurance policy was purchased by the Moorings from the Westchester Fire Insurance Company in the sum of $300, payable to the plaintiff as his interest might appear, the matter would be a proper subject for adjudication in this suit. An agreement between a mortgagee and a mortgagor, or vendee and vendor, that the latter will insure property for the benefit of the former, gives the latter an equitable lien upon the proceeds of the policy, and he is entitled to an application of the same to the indebtedness. Norwich Union Fire Ins. Soc. v. Citizens' Bldg. & Loan Ass'n (Tex.Civ.App.) 7 S.W.(2d) 144; 24 Tex. Jur. p. 1173, § 331. It follows that the court erred in sustaining the demurrers and dismissing the suit as to the Westchester Fire Insurance Company. We are also of the opinion that upon the same theory the pleading reflects a possible cause of action against the Northwestern Fire & Marine Insurance Company. However, upon another trial the pleadings will doubtless be recast, and a more accurate statement made of that cause of action as respects the lien sought to be impressed upon the north half of said lot, and the $200 insurance policy covering the property thereon, and apparently made payable to Thompson. Such a cause of action is analogous to that where a mortgagor agrees with a mortgagee to take out insurance on the mortgaged property for the benefit of the mortgagee, and does procure a policy on such property, but fails to have the loss made payable to the mortgagee as his interest may appear. In such cases, under proper pleadings and testimony, the mortgagee, in case of loss, may assert and establish an equitable lien upon the money due under such a policy. Kirkpatrick v.

Great American Ins. Co. (Tex.Civ.App.) 299 S.W. 943; 24 Tex.Jur. p. 790, § 90. Of course, in such a case there always remains the question of whether or not any recovery at all may be had against the insurance company.

Hence, being of the opinion that the plaintiff's petition stated a cause of action against these defendants, we conclude that the court erred in overruling the general demurrers and dismissing the plaintiff's suit, if indeed that be the ground upon which the suit was dismissed.

If the insurance companies were dismissed because of failure to amend after the general demurrers were sustained, we perceive no reason why the trial court should have gone further and attempted to rule upon the special exceptions raising the questions of misjoinder. Having thus disposed of the case on a plea to its merits, the court was without jurisdiction to proceed to dismiss by reason of misjoinder. However, the court did go further and so consider the special exceptions, sustained the same, and according to portions of the record it appears that upon the appellant's failure to elect and proceed in that court at that time against one or the other of the insurance companies, both were dismissed from the case.

■■ If the dismissal of the suit is in fact referable solely to the court's ruling upon the question of misjoinder, and appellant's failure to elect, etc., then we are of the opinion that there was error in that ruling of the court.

It is a difficult matter to know just when a misjoinder of parties and causes of action exists. No definite and satisfactory rule for the solution of the problem in all cases can be deduced from the decisions. Other closely related rules of law must be considered in determining the question of misjoinder in a given case. The authorities in this state show a general trend toward liberality in the rule permitting joinder of parties and causes of action. Adams v. First Nat. Bank of Waco (Tex. Civ.App.) 178 S.W. 993, 996; Kemendo v. Fruit Dispatch Co. (Tex.Civ.App.) 131 S. W. 73, 76; Commercial Nat. Bank v. First Nat. Bank (Tex.Civ.App.) 77 S.W. 239.

In 1 Tex.Jur. § 34, p. 641, the rule is stated thus: "Misjoinder and multifariousness are terms used to express an improper joinder together in one suit of parties and causes. But there is no positive, inflexible rule as to when this vice may be said to exist or as to what constitutes an improper joinder; each case is governed by its own circumstances, and whether there is multifariousness or not is left in a great measure to the sound discretion of the court. The rule forbidding a misjoinder or multifariousness is said to be one of mere convenience and expediency—one which will not be permitted to defeat the general policy of avoiding a multiplicity of suits. Accordingly an objection on the ground of multifariousness is not favored, and the mere fact that numerous issues are presented in a petition against numerous defendants will not render the petition bad for this reason."

In Paul v. Sweeney (Tex.Civ.App.) 188 S.W. 525, 527, it is said: "The rule * * * forbidding the misjoinder of causes of action is a rule of convenience and expediency, and should be construed with reference to the broader policy which enjoins the avoidance of a multiplicity of suits. The leading principle in our law and system of procedure is to avoid a multiplicity of suits, and to settle in one action the respective rights and claims of parties where they are of such a nature as to admit of adjustment in that mode." (Citing authorities.)

In this same authority, the following rule is also deduced from the decisions: "The right to sue in one action for a breach of contract and for damages for a tort, where both claims grow out of the same transaction, and are so connected that they may conveniently and appropriately be litigated together, is in accordance with the decisions of this state." (Citing authorities.)

In Adams v. First Nat. Bank of Waco, supra, it was held: "That matters ex contractu and ex delicto may be joined where they grow out of the same transaction, relate to the same subject-matter, and are dependent in their principal features upon the same evidence." (Citing authorities.)

■ Applying the above principles to the causes of action asserted in plaintiff's petition, it seems to us that the suit is one peculiarly appropriate for adjudication in one suit in the district court, where relief in law and equity is available. The original transaction out of which the litigation springs is the transaction (alleged) whereby J. Cleo Thompson undertook to have said Topletz convey to Mrs. Mooring the entire lot for a consideration evidenced by a note to be secured by a vendor's lien

on the land, and to have such note and lien transferred to the plaintiff (appellant) for the money lent by him, and which it was agreed and understood should be secured not only by the assignment of the note and lien, but by insurance on the improvements upon the property conveyed, such insurance to be payable to the plaintiff as his interest might appear. All the rights asserted or claimed by the suit are traceable to this original agreement or transaction, which is alleged to have failed of complete consummation as a result of said Thompson's alleged fraud. The relief which the plaintiff seeks is in substance the establishment of the debt and lien on an entire tract of land. He seeks an application of his alleged security in the manner following:

(1) A foreclosure of the lien as against the south half of the lot, an application of the proceeds of the sale thereof to the indebtedness; (2) an application of the $300 insurance policy (Westchester) made payable to the plaintiff as his interest appears, or so much thereof as may be necessary to satisfy the indebtedness; (3) if the indebtedness is not then satisfied, he seeks the establishment of a trust against the north half of said lot, and an application of the proceeds of the sale thereof, or so much thereof as is necessary to the payment of the unpaid balance of the debt; and (4) if any portion of the original indebtedness remains unpaid after these applications, he seeks to establish a trust in the $200 insurance policy (Northwestern) covering the property on the north half of the lot, and to have the proceeds of that policy, or so much thereof as is necessary applied to the payment of the unpaid balance of the indebtedness.

Such being the nature of the suit, and the relief sought, and it not appearing from the record that any of the defendants will be prejudiced by a trial of the issues in one suit, and since the policy of avoiding a multiplicity of suits is paramount to considerations of convenience and expediency, based upon questions of joinder, we conclude that the trial court erred in sustaining the pleas of misjoinder as well as in sustaining the general demurrers.

Doubtless, the plaintiff would not be compelled to appropriate the proceeds of his security in the precise manner above indicated, but the same is not contested in any way, and it is more liberal to the defendant Thompson than he would be entitled to in the event the allegations of fraud are well founded.

For the reasons assigned, the motion for rehearing is overruled and the judgment of the trial court is reversed and the cause remanded.